BOARD OF EDUCATION OF BENTON HARBOR AREA SCHOOLS
v WOLFF

Docket No. 69450. Submitted February 8, 1984, at Grand Papids.—
Decided November 19, 1984.

Respondent, Nancy Wolff, was employed since 1965 by petitioner, Board of Education of Benton Harbor Area Schools, as an elementary school teacher. On February 29, 1980, after administrators had made numerous observations in the respondent's classroom following her assignment to a different elementary school, respondent was relieved of her classroom duties by the petitioner and assigned to a noninstructional position. On March 11, 1980, charges were filed with the petitioner alleging that respondent's performance was unsatisfactory and that she was unfit to teach. The petitioner proceeded on the charges and in a decision found that several of the charges were substantiated and ordered the respondent discharged from her teaching position. The petitioner concluded that respondent had failed to establish control over her students, creating an ineffective learning environment in the classroom and a resulting adverse effect on the district. Respondent appealed to the State Tenure Commission alleging that the record before the board of education did not support its finding of reasonable and just cause for discharge. Following *de novo* proceedings, the commission found that, despite extensive efforts made by petitioner to provide assistance to respondent in the area of effective classroom management teachniques, respondent's discharge was improper because she was not afforded an adequate opportunity to correct the deficiencies found in her performance. The com-

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law §§ 628, 688, 689.
[2-4] 68 Am Jur 2d, Schools §§ 162, 168, 183.
   What constitutes "incompetency" or "inefficiency" as a ground for dismissal or demotion of public school teacher. 4 ALR3d 1090.
[4] 68 Am Jur 2d, Schools §§ 185-188.
   Sufficiency of notice of intention to discharge teacher, or not to renew contract, under statutes requiring such notice. 92 ALR2d 751.
[5] 68 Am Jur 2d, Schools § 149 *et seq.*
[6] 27 Am Jur 2d, Equity § 6.

mission ordered that the respondent be reinstated to a classroom position effective at the start of the 1981-1982 school year. It further ordered petitioner to provide respondent training in the area of classroom control and student discipline during the period between the date of the commission's decision and respondent's return to the classroom. Proceedings on the issue of "salary lost" were held in abeyance pending the completion of the 1981-1982 school year. Petitioner then brought a petition for the review of the commission's decision in the Berrien Circuit Court. That court, William S. White, J., affirmed the commission. Petitioner appeals from that order. Respondent cross-appeals claiming that she is entitled to be immediately reinstated and awarded all lost pay. *Held:*

1. The Court of Appeals noted its agreement with the general principle prohibiting a teacher's discharge based on inadequate classroom performance unless the teacher is first notified of and given a reasonable opportunity to correct the deficiency. The court, however, noted its belief that the "opportunity" must necessarily be limited to providing the teacher with a reasonable time to improve, considering all the circumstances.

2. The State Tenure Commission erred in assuming the authority to order equitable relief.

3. The facts found by the commission clearly established reasonable and just cause for respondent's discharge. The record indicates that petitioner went beyond its obligation to notify respondent of her inadequate performance and to allow her a reasonable time for improvement. The petitioner took all reasonable steps in attempting to assist the respondent in the performance of her teaching duties.

4. The commission's conclusions are not supported by the record. Respondent was provided an adequate opportunity to correct the problems found in her classroom. There was reasonable and just cause for her discharge because she failed to correct her inadequate performance.

5. The decisions of the circuit court and the State Tenure Commission are reversed and the decision of the board of education discharging respondent from employment is reinstated.

Reversed.

1. APPEALS — ADMINISTRATIVE LAW — SCHOOLS — STATE TENURE COMMISSION — CONSTITUTIONAL LAW.

A determination by the State Tenure Commission may be reviewed by the Court of Appeals to determine whether the commission's order is authorized by law and is supported by

competent, material and substantial evidence on the whole record (Const 1963, art 6, § 28; MCL 24.306[1][d]; MSA 3.560 [206][1][d]).

2. SCHOOLS — DISCHARGE OF TEACHERS.

The discharge or demotion of a teacher on continuing tenure may be made only for reasonable and just cause shown only by significant evidence proving that the teacher is unfit to teach; the focus of the evidence must be the effect of the teacher's questioned activity on the students (MCL 38.101; MSA 15.2001).

3. SCHOOLS — DISCHARGE OF TEACHERS — REASONABLE AND JUST CAUSE.

Reasonable and just cause for the dismissal of a teacher may be established by substantial evidence that the teacher's classroom is significantly more disorderly or unsafe than would reasonably be expected (MCL 38.101; MSA 15.2001).

4. SCHOOLS — DISCHARGE OF TEACHERS — INADEQUATE CLASSROOM PERFORMANCE.

A teacher may not as a general rule be discharged from employment based on inadequate classroom performance unless the teacher is first notified of and given a reasonable opportunity to correct the deficiency; the opportunity to correct the deficiency must however be necessarily limited to providing the teacher with a reasonable time to improve, considering all of the circumstances.

5. SCHOOLS — STATE TENURE COMMISSION — EQUITY.

The State Tenure Commission is vested with the powers necessary to carry out and enforce the provisions of the teacher tenure act; the commission is a quasi-judicial body created by the Legislature and has not been authorized to exercise equitable jurisdiction or powers (MCL 38.137; MSA 15.2037).

6. EQUITY — LEGISLATIVE TRIBUNALS.

A legislative tribunal does not have equitable jurisdiction unless such jurisdiction is expressly authorized.

*Small, Small, Dettman & Grumbine, P.C.* (by *Stephen C. Small*), for petitioner.

*Foster, Swift, Collins & Coey, P.C.* (by *Arthur R. Przybylowicz*), for respondent.

Before: M. J. KELLY, P.J., and R. M. MAHER and M. P. REILLY,* JJ.

M. P. REILLY, J. On June 30, 1980, petitioner, Board of Education, of Benton Harbor Area Schools, dismissed respondent from her teaching position on the ground that respondent had failed to establish and maintain control over her students. Resondent appealed to the State Tenure Commission, which held that the discharge was without reasonable and just cause because respondent was not afforded an adequate opportunity to correct the deficiencies which existed in her classroom performance. On June 17, 1981, the commission ordered that respondent be reinstated to a classroom position with petitioner effective at the start of the 1981-1982 school year. It further ordered petitioner to provide training to respondent in the areas of classroom control and student discipline during the period between the date of the commission's decision and respondent's return to the classroom. Proceedings on the issue of "salary lost" were held in abeyance pending the completion of the 1981-1982 school year. Petitioner appealed from the commission's decision to the circuit court, which affirmed. Petitioner appeals as of right. Respondent has filed a cross-appeal claiming that she is entitled to be immediately reinstated and awared all lost pay.

On review, this Court must determine whether the commission's order was authorized by law, and was supported by competent, material and substantial evidence on the whole record.[1]

The facts as found by the State Tenure Commission are not in dispute. Respondent was a tenured teacher employed by petitioner since 1965. The

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Const 1963, art 6, § 28; MCL 24.306(1)(d); MSA 3.560(206) (1)(d).

majority of her teaching career with the Benton Harbor schools was in an elementary school position at the Sorter Elementary School. The Sorter school is located in a rural section of the Benton Harbor district and the student population at Sorter is largely white, middle and lower socioeconomic class. Respondent's overall teaching performance at Sorter was evaluated as satisfactory, although there were noted performance difficulties in the area of classroom management and student discipline.

Following a maternity leave for the 1978-79 school year, respondent was assigned to the fourth grade position at the Martin Luther King, Jr. Elementary School.[2] The King school is located within the City of Benton Harbor and is composed of a predominately black student population.

Respondent began experiencing classroom difficulties almost immediately upon commencement of the 1979-80 school year.[3] These problems centered around respondent's inability to establish effective methods of classroom control. The control problems subverted the instructional process in the classroom.[4]

Administrators made numerous observations of respondent's classroom, followed by conferences with respondent. The building administrator and

[2] Under the terms of the collective bargaining agreement, respondent, on her return, could be assigned to any vacant position in the district. Respondent's request for reassignment to Sorter Elementary was denied.

[3] Because of a labor dispute, the Benton Harbor Schools did not begin the 1979-80 instructional year on the usual date. The usual week for teacher orientation did not occur and school began September 28, 1979.

[4] The commission found that students in the classroom were undisciplined; they were observed wandering freely about the room and talking out of turn. Fighting was frequent and the students entered and left the classroom without permission. Students exhibited a disrespectful attitude toward respondent and refused to participate in instructional activities.

central administrative staff found respondent's classroom performance unsatisfactory. Supervisors provided respondent with suggestions for improving her deficiencies. On February 29, 1980, respondent was relieved of her classroom duties and assigned to a noninstructional position.

On March 11, 1980, charges were filed with petitioner board alleging 11 areas of unsatisfactory performance, concluding that respondent was unfit to teach. The board proceeded on the charges pursuant to provisions of Article IV of the teacher tenure act, MCL 38.101 *et seq.;* MSA 15.2001 *et seq.* By decision dated June 30, 1980, petitioner board found that several of the charges were substantiated and ordered respondent discharged. The board concluded that respondent had failed to establish control over her students, creating an ineffective learning environment in the classroom and a resulting adverse effect on the district.

Respondent appealed to the State Tenure Commission alleging that the record before the board of education did not support a finding of reasonable and just cause for discharge. *De novo* proceedings were held before the commission. On June 17, 1981, the commission, one member dissenting, issued its decision. The only portion of the decision relevant to the present appeal is the commission's findings with regard to the charge that respondent was incompetent to teach. The commission found that, despite extensive efforts made by petitioner to provide assistance to respondent in the area of effective classroom management techniques, respondent's discharge was improper because she was not afforded an adequate opportunity to correct the deficiencies in her classroom performance. The State Tenure Commission ordered the following relief:

"Appellant shall be reinstated to a classroom position with appellee effective the start of the 1981-82 school year. In the interim, appellant shall be afforded pre-placement training by appellee in the area of classroom control and student discipline. During the period of reinstatement, appellant shall be subjected to the same evaluation process as other teachers and shall be provided access to staff development personnel and other resources available to the Benton Harbor teaching staff. If, after a reasonable adjustment period, appellant's classroom has not reached a satisfactory performance level, the board may return to this forum and offer further proofs before this Commission on the charges filed and now pending before us. At that time, a final decision incorporating these additional proofs will be rendered. If appellant's performance achieves a satisfactory level by the end of the school year, and agreement cannot be reached, the parties may seek a decision on the amount of 'salary lost' pursuant to *Shiffer [v Gibraltar School District,* 393 Mich 190; 224 NW2d 255 (1974)]." (Footnote omitted.)

The circuit court affirmed.

The discharge or demotion of a teacher on continuing tenure may be made only for reasonable and just cause. MCL 38.101; MSA 15.2001. Reasonable and just cause can be shown only by significant evidence proving that a teacher is unfit to teach. The focus of the evidence must be the effect of the teacher's questioned activity on the students. *Beebee v Haslett Public Schools,* 66 Mich App 718, 724; 239 NW2d 724 (1976), *rev'd on other grounds* 406 Mich 224; 278 NW2d 37 (1979). The Supreme Court in *Beebee* held that reasonable and just cause for dismissal may be established by substantial evidence that the teacher's classroom is significantly more disorderly or unsafe than would be reasonably expected. 406 Mich pp 233-234.

The commission in this case cited several State

Tenure Commission decisions for the proposition that a controlling board, before discharging a teacher, must give the teacher the opportunity to correct the alleged deficiencies.[5] The commission found that the teaching environment at the King school was substantially different from that encountered by respondent at the Sorter school, and further held that, since respondent was not given "preplacement" training prior to the commencement of her duties at King, she was denied an adequate opportunity to correct the deficiencies in her classroom performance.

Although the commission has consistently required that a teacher be given an opportunity to correct his or her deficiencies prior to discharge, we note that the asserted requirement is not found in any provision of the teacher tenure act or in any Michigan appellate court decision. This Court agrees with the general principle prohibiting a teacher's discharge based on inadequate classroom performance unless the teacher is first notified of and given a reasonable opportunity to correct the deficiency; however, we believe that the "opportunity" must necessarily be limited to providing the teacher with a reasonable time to improve, considering all the circumstances.

While the State Tenure Commission is "vested with such powers as are necessary to carry out and enforce the provisions of this act", MCL 38.137; MSA 15.2037, it has not been authorized to exercise equitable jurisdiction. The State Tenure Commission is a quasi-judicial body created by the

[5] The commission cited *Chesher v Coldwater Community Schools (After Remand),* Docket No. 73-56-R (1979); *Niemi v Bd of Ed of the Kearsley Community School Dist (After Remand),* Docket No. 74-36-R (1978) aff'd on other grounds 103 Mich App 818; 303 NW2d 905 (1981), lv den 411 Mich 1076 (1981); *Cameron v Bd of Ed of the Algonac Community Schools,* Docket No. 77-25 (1979) *Comstock Public Schools v Wildfong (After Remand),* Docket No. 74-26-R (1980); *Knox-Brown v Bd of Ed of the Benton Harbor Area Schools,* Docket No. 79-41 (1980).

Legislature. Unless expressly authorized, a legislative tribunal does not have equitable jurisdiction. *Dation v Ford Motor Co,* 314 Mich 152; 22 NW2d 252 (1946). We find no provision in the teacher tenure act authorizing the commission to exercise equitable powers by requiring a controlling board to take affirmative steps to afford specialized training to a teacher who has failed to perform his or her professional duties. We hold that the State Tenure Commission erred in assuming the authority to order equitable relief. We agree with the observations expressed by Member Gibson in her dissenting opinion in this case:

"My greatest concern lies with the remedy fashioned by the majority. The Act, as I read it, does not contain a provision affording this Commission the authority to order the retraining of a teacher or to subject the teacher, her students and the employer to a trial period of employment beyond the statutory period of probation. Article IV, Section 3, MCL 38.103; MSA 15.2003, provides only for reinstatemnt with payment of salary lost. This is the only relief provided by the Legislature. Had the Legislature desired the retraining of teachers by their employers, it would have clearly provided for that relief in the statute.

"I must also question the burden the relief formulated has placed on the district. An individual who has been awarded a teaching certificate in this state must meet certain educational and performance requirements. See the Administrative Rules Governing the Certification of Michigan Teachers, R 390.1101 *et seq.* To demand of a board that a failing teacher be retrained—be taught to teach—far exceeds the already vigorous requirements placed upon school boards by our decision in *Niemi v Board of Education of the Kearsley Community School District* [Docket No. 74-36-R (1978)]. To require the retraining of the teacher, to meet the changing circumstances of his or her employment, is an untenable burden to impose. Especially, in the instant cause, where the assistance already provided has

proven futile. One must ask what good is achieved by submitting appellant to further attempts to educate her?

"Further, the majority has failed to consider the obligation of the employee. Should not the teacher bear part of the burden in maintaining her professional competency? Here, nothing suggests appellant took any action to acclimate herself to her changed classroom situation. To assess the blame for her failure solely on the board is both unfair and unwise.

"Finally, the majority disregards the real dangers inherent in returning appellant to the classroom. If appellant's retraining fails, her 1981-82 students face the same fate as those in her 1979-80 classroom. Not only would a year of schooling be wasted, but returning appellant to the classroom may jeopardize the physical well-being of the children, as well."

In this Court's opinion, the facts found by the commission clearly establish reasonable and just cause for respondent's discharge.

At the beginning of the 1979-80 school year, requests for assistance by respondent and complaints from students and other teachers prompted the building principal, Ms. Yingst-Morris, to make a formal classroom observation on November 9, 1979. She found an unstructured, undisciplined classroom. The children were ignoring the instruction being attempted, they talked out of turn and engaged in other disruptive behavior. Ms. Yingst-Morris, in reviewing the observation with respondent, emphasized the lack of discipline as the paramount problem. Respondent was referred to a number of sources (tapes, film strips and staff development personnel) and was provided with a number of suggestions for bringing order to the classroom.

A second observation on November 20, 1979, disclosed some improvement in student control, though the disciplinary problems observed were

still considered detrimental to the instructional program. Respondent, who had undertaken and followed a number of the earlier recommendations, was again provided recommendations for strengthening student control.

During December, supervisors made daily informal observations and one formal observation was made. Some improvement was noted on classroom discipline; however, a growing lack of student respect for respondent was noted. Much of the instruction consisted of copying assignments. Children were leaving the classroom at will and they remained a disruptive force to other classroom. Respondent was again referred to staff development personnel for further assistance in all aspects of her teaching performance. An observation from January 18, 1980, showed "* * * progress evident in the area of discipline, seatwork, and instruction", however, the overall rating given was "need for improvement".

Ms. Yingst-Morris' performance evaluation dated January 24, 1980, rated respondent not acceptable in 8 of 11 performance categories. It reflected the problems and difficulties observed in earlier observations, and highlighted the discipline problems and the detrimental effect of these problems in the classroom. Specific steps for improvement were provided.

Two additional administrators were called into the classroom to observe respondent. Ms. Gregory concluded that effective classroom control was absent, and she recommended that respondent be removed from the classroom at once. Dr. Jeter, Director of Elementary Education, found in her initial observation on January 22, 1980, a classroom lacking in an environment conducive to learning. She attached to her observations a list of ten solutions. In Dr. Jeter's second observation,

she noted some minor improvements but found that major problems remained. Dr. Jeter concluded that respondent should be removed from the classroom because her performance was handicapping the children.

Ms. Yingst-Morris made a final observation on February 5, 1980, and found that improvements which had been noted in prior observations were absent. The room was described as chaotic. Little control over students was exhibited and, as a result, there was no viable instructional program occurring. A final evaluation was issued February 19, 1980. Respondent was again found not acceptable in 8 of 11 performance areas. A detailed critique of her work and suggestions for improvement were included. Respondent was thereafter removed from the classroom.

The commission's decision notes that, as early as November 19, 1979, efforts were made by petitioner's personnel office to provide assistance to respondent. Three consultants offered assistance in the math and reading programs and in effective classroom management techniques.

Upon a review of the record, the evidence is clear that petitioner went beyond its obligation to notify respondent of her inadequate performance and to allow her a reasonable time for improvement. The petitioner took all reasonable steps in an attempt to assist respondent in performing her duties at the King school. We find that the commission's conclusions are not supported by the record. The respondent was provided an adequate opportunity to correct the problems which the commission found existed in her classroom performance and, because she failed to correct her inadequate performance, there was reasonable and just cause for her discharge.

The decisions of the circuit court and the State

Tenure Commission are reversed and the decision of the board of education discharging respondent from employment is reinstated.

Reversed.