LEWIS v BRIDGMAN PUBLIC SCHOOLS (ON REMAND)

Docket No. 261349. Submitted March 26, 2008, at Lansing. Decided July
    1, 2008, at 9:20 a.m. Leave to appeal sought.
    James Lewis, a high school teacher in the Bridgman Public Schools,
        gave a student an air gun at school despite a school district policy
        calling for the expulsion of any student who possesses a "danger-
        ous weapon," which the policy defined to include air guns. The
        school district initiated a proceeding for Lewis's discharge. After a
        hearing, a hearing referee at the State Tenure Commission issued
        a preliminary decision and order for Lewis's discharge. Both
        parties filed exceptions to the hearing referee's decision. Although
        the commission agreed with the referee's findings, it decided that
        the proper penalty was an unpaid suspension, given the lack of
        improper motive by Lewis and given his significant contributions
        to the school district as a teacher. The Court of Appeals, SERVITTO,
        P.J., and TALBOT, J. (FITZGERALD, J., dissenting), reversed and
        remanded, holding that the commission erred by reviewing the
        hearing referee's decision de novo when it should have limited its
        review to whether the hearing referee's decision was supported by
        competent, material, and substantial evidence. 275 Mich App 435
        (2007). The Supreme Court, in lieu of granting leave to appeal,
        reversed and remanded, directing the Court of Appeals to consider
        whether the commission's decision was arbitrary, capricious, or an
        abuse of discretion; or unsupported by competent, material, and
        substantial evidence on the whole record. 480 Mich 1000 (2007).

    On remand, the Court of Appeals held:

    The commission's decision was not arbitrary, capricious, or an
    abuse of discretion; nor was it unsupported by competent, mate-
    rial, and substantial evidence on the whole record.

    Affirmed.

    FITZGERALD, J., stated that tenured teachers may be discharged
    or demoted only for reasonable and just cause. MCL 38.101. The
    school district or controlling board of education bears the burden
    of establishing reasonable and just cause, which can be shown only
    by significant evidence proving that the teacher is unfit to teach.
    The commission has authority to adopt, modify, or reverse the
    preliminary decision and order of a hearing officer. MCL

38.104(5)(m). The commission has the authority to reduce the level of discipline from discharge to suspension where it determines that the charged misconduct, while proven, was not reasonable and just cause for discharge. In this case, the commission acted within its authority in concluding that Lewis's misconduct did not constitute reasonable and just cause for discharge, and in reducing the penalty to a suspension.

TALBOT, J., stated that he was constrained by the Supreme Court's order to concur in the affirmance of the commission's decision. He wrote to take issue with the standard of review laid out by the Supreme Court, noting that the changes made by 1993 PA 60 to the procedure for appealing from a controlling board of education's decision necessitates a re-examination of the proper scope of the commission's authority to modify a controlling board's decision regarding the penalty imposed for misconduct by a tenured teacher.

SERVITTO, P.J., likewise stated that she was constrained by the Supreme Court's order to concur in the affirmance of the commission's decision. She stated that statutory changes have substantially altered the standard of review and that meaningful review is precluded with the continued use of the old standard of review.

*Kalniz, Iorio & Feldstein Co., L.P.A.* (by *Fillipe S. Iorio*), for James Lewis.

*Thrun Law Firm, P.C.* (by *Roy H. Henley*), for the Bridgman Public Schools.

Amicus Curiae:

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Joshua S. Smith*, Assistant Attorney General, for the State Tenure Commission.

ON REMAND

Before: SERVITTO, P.J., and FITZGERALD and TALBOT, JJ.

FITZGERALD, J. This teacher-tenure case returns to this Court on remand from our Supreme Court. Respondent Bridgman Public Schools (the school district)

appeals by leave granted from the State Tenure Commission's February 18, 2005, decision and order that reduced petitioner James Lewis's discipline from discharge, as recommended by the hearing officer, to a suspension without pay or benefits through the end of the 2005-2006 school year. On May 8, 2007, a majority of this panel reversed, concluding that the tenure commission had applied an incorrect standard of review.[1] *Lewis v Bridgman Pub Schools*, 275 Mich App 435; 737 NW2d 824 (2007), rev'd 480 Mich 1000 (2007).

Lewis sought leave to appeal in the Supreme Court. In lieu of granting leave to appeal, the Supreme Court reversed this Court's decision[2] and remanded "for consideration of whether the commission's decision was arbitrary, capricious, or an abuse of discretion; or unsupported by competent, material, and substantial evidence on the whole record." *Lewis v Bridgman Public Schools*, 480 Mich 1000 (2007).

The background facts were set forth in this Court's previous opinion:

> This case arose when Lewis, a high school teacher with 12 years of teaching experience, presented his 18-year-old male teaching assistant, a student at the high school, with an air gun as a Christmas gift. Presentation of the gift was made while on school property. The air gun, described as an accurate replica of a Ruger semi-automatic handgun, along with ammunition, was presented to the teaching assistant in the presence of other students. The air gun discharges plastic pellets and has a muzzle velocity of over 250 feet per

---

[1] I dissented and stated that the tenure commission's application of a de novo standard of review was proper.

[2] The Supreme Court reversed this Court's judgment "because the teacher tenure act, MCL 38.101 *et seq.*, does not require the State Tenure Commission to apply a 'clear error,' rather than a 'de novo' standard of review to its consideration of the preliminary decisions of administrative law judges."

second, which is comparable to other types of pellet guns and BB rifles. Although the box containing the air gun indicated specific warnings, particularly regarding the need for eye protection, Lewis did not provide such protective gear as part of the student's gift. Lewis did not instruct the student on safe use of the air gun or any dangers regarding its use. In addition, Lewis failed to solicit or secure the advice or permission of school administrators or the student's parents before the selection and presentation of the gift.

The student was uncomfortable with accepting this gift and feared expulsion for having the air gun on school property. This concern was legitimate, as possession of the gun was violative of School District Policy No. 5610.01, which states in relevant part:

"In compliance with State and Federal law, the Board shall expel any student who possesses a dangerous weapon in a weapon-free school zone. . . .

\* \* \*

"For purposes of this Policy, a dangerous weapon is defined as, 'a firearm, dagger, dirk, stiletto, knife with a blade over three (3) inches in length, pocket knife opened by a mechanical device, iron bar, or brass knuckles' or other devices designed to or likely to inflict bodily harm, including, but not limited to, air guns and explosive devices."

The air gun remained in an unlocked storage room in Lewis's classroom for several weeks before the student took the air gun home. When the student informed his parents of the gift, they complained to the school, which resulted in the school district's decision to proceed with charges for Lewis's discharge. [*Lewis, supra*, 275 Mich App at 437-438.]

Lewis was charged with abrogating his responsibility to perform his duties in a professional manner and to act as an appropriate example and role model for students. He was also charged with insubordination for

violating the school district's policy on staff conduct and ethics, which prohibits staff members from possessing or storing weapons on school property. The policy defines "weapon" to include "air and gas-powered guns."

At the tenure hearing, the school district supported its request for Lewis's discharge with evidence of several prior incidents exemplifying Lewis's poor judgment. These incidents included (1) a 1993 remark to a student high jumper that he should arch his back as if "there is a vagina in the sky," which resulted in a letter of reprimand, (2) a 1993 incident involving sleeping in the school building, (3) arriving at work more than one hour late on one occasion, (4) making a sexual comment to a female student, (5) bringing his dog onto school property, resulting in the dog biting a student, (6) allowing his dogs to run loose in the school building during Christmas break, (7) a comment to a female student that she did not know who her father was, which generated a letter of concern, (8) telling his class that he had been to a condom shop "but they didn't have [his] size," which resulted in a two-day suspension without pay in 2002, and (9) inappropriate physical contact with a female student after he approached the student from behind, wrapped his arms around her mid-section, and lifted her off the floor, which generated a letter of concern. In March 2003, Lewis was placed in an individualized development plan that lasted for two months, which he successfully completed.

Evidence of Lewis's many positive contributions to the school was also presented at the hearing. He served as class advisor on two occasions, started an environmental-science stewardship program and a recycling program, served on the school's curriculum committees, served as science-club advisor, coached the

Science Olympiad team, led students on community-service events, and organized science-related field trips. Lewis has coached various middle-school sports teams, developed the cross-county program for middle school, supervised the intramural sports program, volunteered with the high school sports program, and participated in summer sports programs. His fellow teachers and coaches described him as positive, upbeat, good with students, an effective and outstanding teacher, and a passionate and effective coach. Two of Lewis's former students testified that he was an effective teacher.

The hearing officer issued a 28-page preliminary decision and order, finding that the school district had proven reasonable and just cause to terminate Lewis's employment. The hearing officer found that Lewis "showed a serious lack of professional judgment" in giving the air gun to the student, and that the air gun was "not a mere toy." The hearing officer found that Lewis had ample opportunity to reflect on his choice of gift, that he disregarded warnings on the gun box, that he did not provide the student with any protective eye gear, that he did not seek permission from the student's parents before giving such a gift, that he knew nothing of the student's family, including whether there were young children living in the family's home, and that the gift placed the student at risk of expulsion. The hearing officer further found that the realistic appearance of the air gun had the potential to lead to "an extremely dangerous law enforcement response." After applying the discipline factors in *Szopo v Richmond Comm Schools Bd of Ed* , State Tenure Commission Decision (Docket No. 93-60, decided November 29, 1994), the hearing officer determined that discharge was appropriate on the basis of the following: (1) Lewis's behavior was planned and intentional, (2) the incident involved a realistic replica of a semi-automatic weapon, (3) the

incident placed the school community and the student at risk, (4) the incident caused considerable anxiety to the student and his family, and (5) Lewis's prior lapses of judgment. The hearing officer explained his reasons for recommending Lewis's discharge:

> There was undisputed testimony of [Lewis's] significant contributions to the Bridgman school community, and I cannot conclude from the evidence that his motive in this instance was improper. Nevertheless, given [Lewis's] history of significant lapses in judgment, the egregious violation of professional decorum in his choice of [the student's] gift, and the school district's legitimate concern to maintain a safe environment free of weapons, including replica weapons, I am persuaded that discharge is the appropriate remedy in this case. I find that this is the sole remedy which both reflects the seriousness of appellant's conduct and serves as a clear message that such conduct will not be tolerated.

Both parties filed exceptions to the hearing officer's preliminary decision and order.

The tenure commission issued a 32-page decision and order, rejecting all but one of the parties' exceptions. The tenure commission disagreed with the hearing officer's recommendation of discharge, and instead imposed a suspension without pay until the end of the 2005-2006 school year. The tenure commission affirmed the hearing officer's conclusions in all other respects, stating that the hearing officer's findings "clearly support his determination that [Lewis] demonstrated a serious lack of professional judgment" given his failure to consider "possible ramifications" of giving the gift to the student while on school property, particularly given the "close resemblance" of the air gun "to an actual semi-automatic pistol." The tenure commission applied the *Szopo* factors, and was "left with the definite conclusion that [Lewis's] misconduct was both egre-

gious and a clear violation of the conduct expected of a
teaching professional." The tenure commission was also
"troubled" by Lewis' lack of appreciation for the seri-
ousness of his misconduct and by his history of "less
serious lapses of judgment," which went uncorrected
despite interventions by the school district.

However, in support of its decision to reduce the
penalty from discharge to suspension, the tenure com-
mission cited a lack of evidence of an "improper motive"
by Lewis, and "undisputed evidence" of Lewis's "sig-
nificant contributions to the District" as a teacher. The
tenure commission reasoned:

> [W]e cannot ignore the lengthy and positive contribu-
> tion to teaching [Lewis] has made. While it is clear that a
> serious penalty recognizing the gravity of [his] misconduct
> and acting to deter future improper behavior is in order, we
> find discharge is too severe for this particular teacher based
> on these circumstances. Further, a reduction in the level of
> discipline more fairly reflects the principle of progressive
> discipline as [Lewis's] only previous formal discipline was a
> two-day unpaid suspension.
>
> Thus, after considering all of the facts underlying
> [Lewis's] misconduct, previous Commission cases where rec-
> ommended discharges were reduced to lengthy penalties, and
> [Lewis's] significant contributions as a teacher, we believe an
> unpaid suspension until the end of the 2005/2006 school year
> is appropriate. The substantial length of this penalty recog-
> nizes the seriousness of [Lewis's] misconduct and provides a
> strong message to appellant to exercise good judgment in his
> future teaching career.

The school district argues that the tenure commis-
sion's reduction in discipline was unsupported by com-
petent, material, and substantial evidence on the whole
record. A final decision of the tenure commission must
be upheld if it is not contrary to law, is not arbitrary,
capricious, or a clear abuse of discretion, and is sup-

ported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; MCL 24.306(1)(d); *Beebee v Haslett Pub Schools (After Remand)*, 406 Mich 224, 231; 278 NW2d 37 (1979). "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision; it is more than a scintilla but may be substantially less than a preponderance." *Parker v Bryon Center Pub Schools Bd of Ed*, 229 Mich App 565, 578; 582 NW2d 859 (1998). This Court gives due deference to the expertise of an administrative agency, and will not "invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views." *Widdoes v Detroit Pub Schools*, 218 Mich App 282, 286; 553 NW2d 688 (1996) (citation and quotation marks omitted). Review involves a degree of qualitative and quantitative evaluation of all the evidence that the tenure commission considered, rather than just those portions of the record supporting the tenure commission's decision. *Ferrario v Escanaba Bd of Ed*, 426 Mich 353, 366-367; 395 NW2d 195 (1986).

Tenured teachers may be discharged or demoted only for reasonable and just cause. MCL 38.101; *Satterfield v Grand Rapids Pub Schools Bd of Ed*, 219 Mich App 435, 437; 556 NW2d 888 (1996). The school district bears the burden of establishing reasonable and just cause, which can be shown only by significant evidence proving that the teacher is unfit to teach. *Parker, supra* at 574; *Benton Harbor Area Schools Bd of Ed v Wolff*, 139 Mich App 148, 154; 361 NW2d 750 (1984). The tenure commission has authority to "adopt, modify, or reverse the preliminary decision and order" of the hearing officer. MCL 38.104(5)(m).

The Legislature has vested the tenure commission with decision-making authority regarding an appropri-

ate penalty for teacher misconduct. In *Lakeshore Bd of Ed v Grindstaff (After Second Remand)*, 436 Mich 339; 461 NW2d 651 (1990), our Supreme Court held that the tenure commission has the authority under MCL 38.101 to reduce the level of discipline for a tenured teacher from discharge imposed by a school board to suspension where it determines that the charged misconduct, while proven, was not reasonable and just cause for discharge.

The tenure commission's finding of reasonable and just cause to reduce Lewis's discipline from discharge to a lengthy suspension without pay was not arbitrary or capricious, or an abuse of discretion, and it was supported by competent, material, and substantial evidence on the whole record. The tenure commission differed with the hearing officer's conclusions only with regard to the appropriate level of discipline, and it gave several reasons for its decision to modify the hearing officer's recommendation and impose a less severe penalty.

Lewis's involvement in the community and his teaching record militated against termination. Teachers and former students praised Lewis's teaching ability, and described him as an exceptional teacher and coach. The tenure commission observed that Lewis's record "show[ed] numerous examples of a teacher who went well above and beyond what was required." Although the hearing officer found that several of the factors articulated in *Szopo, supra,* supported discharge, other factors weighed in Lewis's favor. Lewis's motive in giving the air gun to the student was not malicious, no actual harm resulted, and Lewis had no previous violations of the school's weapons policy. Lewis took responsibility for his actions and stated that he would not repeat the misconduct in the future. *Id.*

Additionally, the tenure commission's application of progressive discipline principles favored a more lenient penalty than discharge. Although Lewis's record showed that he had exercised poor judgment on numerous occasions, he received only reprimands for all but one of the previous incidents. The only formal discipline imposed was a two-day suspension. This is Lewis's second offense, for which the tenure commission suspended him for more than one year. This escalation from the first-offense, two-day suspension was reasonable.

The tenure commission acted within its authority in concluding that Lewis's misconduct did not constitute reasonable and just cause for discharge, and reducing the penalty to a lengthy suspension. *Lakeshore, supra.* The evidence militating against discharge was undisputed, and it was competent and substantial. All of the tenure commission's reasons for imposing a punishment short of termination are adequately grounded in the record.

Affirmed.

TALBOT, J. (*concurring*). This matter is on remand by order of the Michigan Supreme Court based on that court's determination that "the teacher tenure act, MCL 38.101 *et seq.*, does not require the State Tenure Commission to apply a 'clear error,' rather than a 'de novo,' standard of review to its consideration of the preliminary decisions of administrative law judges." *Lewis v Bridgman Pub Schools*, 480 Mich 1000 (2007). The Court remanded the case "for consideration of whether the commission's decision was arbitrary, capricious, or an abuse of discretion; or unsupported by competent, material, and substantial evidence on the whole record." *Id.*

Because I am constrained by the language of the Supreme Court's remand order, I am forced to concur

with this Court's revised ruling. However, I must take issue with the abbreviated review engaged in by our Supreme Court, which focused solely on the standard of review and failed to address the substantive issue pertaining to the effect of statutory changes on the role and authority of the tenure commission. As a result, I am compelled to write separately on this important and dispositive issue. Specifically, I am concerned about the failure to review or consider the effect of the amendment of the teacher tenure act by 1993 PA 60, which initiated the use of a hearing officer, and the presumed propriety of the continued application of a de novo standard of review.

In order to understand my concerns, which were outlined in the original opinion in this case, which is[1] now on remand, I believe it is necessary to provide a short historical perspective of how the authority of the tenure commission has evolved and the Court's role in that development. Disputes regarding the authority of the State Tenure Commission to alter disciplinary decisions by school boards are longstanding and have arisen repeatedly in caselaw. See *Rehberg v Melvindale, Ecorse Twp School Dist No 11 Bd of Ed*, 345 Mich 731; 77 NW2d 131 (1956) (*Rehberg II*); *Rehberg v Melvindale, Bd of Ed*, 330 Mich 541; 48 NW2d 142 (1951) (*Rehberg I*). This line of caselaw recognized that

> [t]he tenure act places an additional safeguard upon the arbitrary or unreasonable dismissal of teachers and is designed for their protection. It does not, however, otherwise diminish or interfere with the administrative power of the local controlling board, nor require it to indulge in idle ceremonies. [*Rehberg I* at 548.]

However, these cases did not resolve the primary issue that is currently before this Court regarding the au-

---

[1] *Lewis v Bridgman Pub Schools*, 275 Mich App 435; 737 NW2d 824 (2007), rev'd 480 Mich 1000 (2007).

thority of the tenure commission to overrule a controlling board and substitute its judgment regarding the punishment to be imposed for teacher misconduct. That determination arose later in *Long v Bd of Ed, Dist No 1, Fractional Royal Oak Twp and City of Royal Oak*, 350 Mich 324; 86 NW2d 275 (1957), when our Supreme Court ruled that the teacher tenure act, "[d]iscloses clear legislative intent that the commission—following appeal by a teacher under said article 6—be vested with duty and authority to determine, anew and as original questions, all issues of fact and law theretofore decided by the controlling board." *Id.* at 327. It should be noted, however, that the Court made this ruling regarding "the commission's administrative function" based "particularly from language appearing in section 1 of said article 6, by which the commission is directed to conduct its hearing on the appeal 'the same as provided in article 4, section 4 of this act.' " *Id.*

At the time of this 1957 ruling, MCL 38.121, comprising article 6, § 1, provided:

> A teacher who has achieved tenure status may appeal any decision of a controlling board under this act within 30 days from the date of such decision, to a state tenure commission. The state tenure commission shall provide for a hearing to be held within 60 days from the date of appeal. Notice and conduct of such hearing shall be the same as provided in article 4, section 4 of this act, and in such other rules and regulations as the tenure commission may adopt.

MCL 38.104, constituting article 4, § 4, detailed the procedure to be followed by the controlling board and the tenure commission in the conduct of hearings, including, in relevant part:

> a. The hearing shall be public or private at the option of the teacher affected.

b. No action shall be taken resulting in the demotion or dismissal of a teacher except by a majority vote of the members of the controlling board.

c. Both the teacher and the person filing charges may be represented by counsel.

d. Testimony at hearings shall be on oath or affirmation.

e. The controlling board shall employ a stenographer who shall make a full record of the proceedings of such hearing and who shall, within 10 days after the conclusion thereof, furnish the controlling board and the teacher affected thereby with a copy of the transcript of such record, which shall be certified to be complete and correct.

f. Any hearing held for the dismissal or demotion of a teacher, as provided in this act, must be concluded by a decision in writing, within 15 days after the termination of the hearing. A copy of such decision shall be furnished the teacher affected within 5 days after the decision is rendered.

g. The controlling board shall have the power to subpoena witnesses and documentary evidence, and shall do so on its own motion or at the request of the teacher against whom charges have been made [1937 (Ex Sess) PA 4, art IV, § 4.]

Under the statutory language, existing at that time, it was clearly appropriate to require the use of a de novo standard of review, given the authority of the tenure commission to not only review the record developed by the controlling board on appeal, but to also generate additional evidence and testimony as part of its review process.

However, 1993 PA 60 substantively changed the procedure to be used in the appeal of a decision by a controlling board and, in my opinion, necessitates a renewed look at the effect of the statutory changes on the process of reviewing controlling-board rulings in light of the current restrictions placed on the authority

of the tenure commission. Even before amendment of
the act, our Supreme Court acknowledged that many of
its rulings pertaining to the authority of the tenure
commission came, not from the language of the statute
itself, but rather were the result of judicial construc-
tion. Specifically, the Court noted:

> [T]he act has been construed, as a matter of practice, to
> safeguard a tenured teacher against suspension except for
> reasonable and just cause and to provide for review of a
> suspension by the Tenure Commission. The act thus has
> been construed, although it does not literally provide
> therefor, to mean, in effect, that the commission shall
> determine whether there was reasonable and just cause for
> the imposition of the "discipline" imposed by the school
> board, whether the discipline imposed was suspension or
> discharge. [*Lakeshore Bd of Ed v Grindstaff (After Second
> Remand)*, 436 Mich 339, 356; 461 NW2d 651 (1990).]

What is currently problematic is the fact that the scope
and authority of review by the tenure commission has
been substantively circumscribed through amendment
of the act but the courts continue to adhere to the
judicially created prior review standard without any
consideration of these changes.[2] While I admit, as noted
by the Supreme Court in its order of remand, that the
act "does not require the State Tenure Commission to
apply a " 'clear error' " standard of review, I would

---

[2] This calls to mind an essay by United States Supreme Court Justice
Antonin Scalia, in which he postulates:

> What intellectual fun all of this is! It explains why first-year
> law school is so exhilarating: because it consists of playing
> common-law judge, which in turn consist of playing king—
> devising, out of the brilliance of one's own mind, those laws that
> ought to govern mankind. How exciting! And no wonder so many
> law students, having drunk at this intoxicating well, aspire for the
> rest of their lives to be judges! [Scalia, *A Matter of Interpretation:
> Federal Courts and the Law* (Princeton: Princeton University
> Press, 1997).]

contend that the statutory language also does not specifically mandate the use of a de novo standard of review. The Court has previously determined the appropriate standard of review by judicial construction. It would seem that amendment of the statute provides the perfect opportunity, as well as the necessity, to revisit our interpretation of this language and how it affects procedure.

As a starting point in this analysis, I must take issue with our Supreme Court's purported reliance on MCL 38.101 in its ruling in *Lakeshore*, which suggested that this statute provided the tenure commission with the authority to determine what constitutes an appropriate penalty for teacher misconduct and permitted it to reduce or alter a school board's determination regarding the appropriate level of discipline to be imposed for teacher misconduct. In reality, the relevant portion of MCL 38.101 states only that "[d]ischarge or demotion of a teacher on continuing tenure may be made only for reasonable and just cause and only as provided in this act." Further, the suggestion that this purported authority derives from MCL 38.101 is directly contrary to the specific acknowledgement by our Supreme Court that the exercise of the decision-making function pertaining to penalties imposed for teacher misconduct actually originated through judicial construction. See *Lakeshore, supra* at 356.

The primary provision of the act addressing the role of the tenure commission has been amended to circumscribe its authority. MCL 38.104 now provides, in relevant part:

> (5) The hearing and tenure commission review shall be conducted in accordance with the following:

*  *  *

(m) *If* exceptions are filed, the tenure commission, after
review of the record and the exceptions, may adopt, modify,
or reverse the preliminary decision and order. The tenure
commission *shall not hear* any additional evidence and *its
review shall be limited* to consideration of the issues raised
in the exceptions based solely on the evidence contained in
the record from the hearing. [Emphasis added.]

Such language does not automatically, nor inevitably,
lead to an interpretation requiring the use of a de novo
standard of review or the vesting of authority by the
Legislature in the tenure commission to substitute its
judgment for the controlling board regarding the disci-
pline to be imposed for teacher misconduct. Rather, I
would contend that the language equally lends itself to
a reading and understanding that the tenure commis-
sion may review the record and is restricted solely to a
determination whether the controlling board's actions
are substantiated by reasonable and just cause in accor-
dance with the legislative intention underlying the act.

The amendment of the statutory language renders the
reasoning provided by Chief Justice Riley in the dissent to
*Lakeshore* all the more compelling and applicable to the
circumstances of this case. Chief Justice Riley opined that
"the function of the commission in reviewing the dis-
charge or discipline of a teacher is limited to determining
whether the local board's action was for 'reasonable and
just cause.' " *Lakeshore, supra* at 358 (Riley, C.J., dissent-
ing). Reviewing the history of decision-making by the
tenure commission, Chief Justice Riley noted:

There is, obviously, no express authority granted to the
commission in the statute itself to reduce or otherwise
modify a penalty imposed by a local board. The statute
gives the local board the right to discharge or demote a
teacher for "reasonable and just cause." The teacher has
the right to appeal the board's action to the commission,

which conducts its own hearing on the matter, in the same manner as the local board. On appeal, the commission acts as a "board of review" and is vested with "such powers as are necessary to carry out and enforce the provisions" of the act.

The plaintiff and the commission contend that this statutory scheme impliedly vests the commission with the authority to modify the decisions of a local board regarding the severity of the penalty imposed on a teacher. They rely on various decisions of this Court to establish that authority. In my view, such reliance is misplaced. [*Id.* at 359-360 (citations omitted).]

Relying on the language of the statute indicating that the tenure commission functions as a "review board," Chief Justice RILEY opined, "[T]he mere fact that the commission has the authority to *review* the penalty imposed, to determine whether it is for reasonable and just cause, does not necessarily mean that it has the right to *alter* that penalty if it concludes otherwise." *Id.* at 365-366 (emphasis in original).

While acknowledging the authority of the tenure commission "to make an independent determination regarding whether the penalty imposed meets the reasonable and just cause standard," Chief Justice RILEY opined that such authority was not bestowed by the Legislature with the intention to create a "super-school board." *Id.* at 366, 368. In conclusion, Chief Justice RILEY took issue with the commission's authority to modify or substitute its judgment for that of the school board with regard to "how to best discipline the teacher," determining that "[t]here is no provision in the Act which expressly or impliedly grants this power to the [commission]." *Id.* at 369. As suggested within Chief Justice RILEY's dissent, the resultant effect of such judicial construction, without commensurate statutory justification, has served to elevate the commission's status from a

"review board" to a policy-making body usurping the authority of local school boards.

As a result, given the substantive changes in the controlling statutory language, I believe it is improper to presume and continue the applicability of prior caselaw interpreting the authority and scope of the tenure commission's review. While I am constrained by the wording of our Supreme Court's order remanding this matter, I am compelled to voice my concerns regarding the restrictions imposed on our review and the resultant elevation of form over substance, precluding our ability to engage in a more thorough and considered analysis of the underlying issue.

Servitto, P.J. (*concurring*). I, like Judge Talbot, concur because I am constrained to do so by the Supreme Court's order on remand. I believe that statutory changes have substantially altered the standard of review governing this matter, and that the employment of what I would consider to be the formerly applicable standard of review severely limits our meaningful review of the issues presented on appeal.