# STATE OF MICHIGAN

# COURT OF APPEALS

LOUIS LAFAYETTE,

        Petitioner-Appellee,

v

GROSSE ILE TOWNSHIP SCHOOLS BOARD
OF EDUCATION,

        Respondent-Appellant.

UNPUBLISHED
August 20, 2015

No. 321920
State Tenure Commission
LC No. 13-000023

Before: SAWYER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Respondent-school board sought to terminate the employment of petitioner, a tenured teacher, pursuant to a student-teacher incident that occurred on May 16, 2013. Petitioner appealed the termination to the State Tenure Commission (Commission). After an evidentiary hearing, the administrative law judge (ALJ) affirmed the termination in a preliminary decision and order (PDO). Petitioner filed exceptions to the PDO before the Commission. The Commission reversed the ALJ's decision and petitioner's termination and ordered him reinstated. Respondent now appeals by delayed leave granted[1] and we affirm.

## I. FACTS

Petitioner began teaching in 1990 and became employed by respondent in 1999, obtaining tenure in 2001.

On May 16, 2013, an incident occurred that resulted in the tenure charges at issue in this case. Petitioner was passing out new textbooks to his middle school science class. A student, CD, was misbehaving by balancing one or two textbooks on his head. Petitioner approached CD, picked up the book/books, and struck CD on the head in an apparent attempt to stop the

---

[1] *Lafayette v Grosse Ile Twp Schs Bd of Ed*, unpublished order of the Court of Appeals, entered October 24, 2014 (Docket No. 321920).

-1-

disruptive behavior.[2] Petitioner later testified that he "tapped" CD on the head; CD testified that petitioner "slammed" the books on his head. As will be discussed below, the degree of force exhibited by petitioner is hotly contested by the parties. In any event, CD finished the school day and apparently informed his father of the incident, who, the next day, emailed David Tucker, the middle school's principal. Tucker forwarded the email to William Eis, the superintendent, who began an investigation on May 18, 2013.

Eis and Tucker interviewed CD and six other students present in the classroom at the time of the incident. Following these interviews and consulting petitioner's personnel file, as well as interviewing petitioner himself, Eis determined that termination of petitioner's employment was appropriate under the circumstances. On June 4, 2013, pursuant to MCL 38.102, Eis filed the following written tenure charges against petitioner:

> Lou Lafayette ("Lafayette") has been employed by the Grosse Ile Township Schools (GITS) as a teacher since September, 1999.

> Lafayette was awarded tenure in 2001.

> On May 17, it was reported to the undersigned that an incident occurred one day earlier in Lafayette's classroom, specifically that Lafayette slammed a book or books on the head of a student.

> My investigation, conclusions and disposition ensured, and are described in detail in the enclosed Exhibit A, "Letter of Termination," which is incorporated into these charges as though fully set forth herein, and which has been previously provided to Lafayette on June 3, 2013.[3]

> Lafayette is currently on paid administrative leave.

> Based upon my investigation, termination of Lafayette's employment is warranted and neither arbitrary nor capricious.

> Therefore, I request that the Board of Education proceed on these charges for discharge of Lou Lafayette. The district reserves the right to amend these charges in the event new information is revealed.

---

[2] A copy of one of the books is part of the lower court record before this Court. While hardcover, as the ALJ noted, it is not heavy, weighing one pound, 7.65 ounces and measuring one-half inch thick.

[3] The referenced letter is thoughtful and detailed and describes Eis's investigation into the tenure charges, e.g., the student interviews, as well as petitioner's employment history with respondent. The ALJ admitted the letter into evidence "only to show the charges lodged against the [petitioner]," finding that the remaining information therein constituted inadmissible hearsay. Neither party challenges this ruling on appeal.

On June 5, 2013, respondent held a special meeting and voted 7-0 to proceed with petitioner's discharge. See MCL 38.102.

On June 25, 2013, petitioner filed a claim of appeal with the Commission. See MCL 38.104(1). A hearing was conducted before an ALJ on October 16 and 17, 2013. The ALJ issued his PDO on February 2, 2014.

In finding that respondent proved the tenure charges by a preponderance of the evidence, the ALJ related the basic facts as described above. He found that the student's testimony was more credible than that of petitioner with regard to how many books the student was balancing on his head, concluding that two books (not one) were involved. With regard to the degree of force exhibited by petitioner, the ALJ concluded:

> Another issue is whether petitioner tapped or slammed CD on the head with the books. CD testified that petitioner slammed the books on his head. By his use of the word "slammed," I understood CD to mean that petitioner brought the books down on his head with some degree of force. Petitioner testified that he "tapped" CD on the head with the books. By "tapped," I understood petitioner to mean that he lightly touched the books to CD's head. There is no question that CD was fooling around with books on his head. I find that petitioner grabbed the book or books, lifted them some distance off from CD's head and brought them down onto CD's head. Petitioner claims [sic] that he was "kidding around" when he brought the books down onto CD's head is contrary to the facts. Under the circumstances, I find that petitioner's act of bumping CD on the head with the books was petitioner's method of letting CD know that he was displeased with his conduct of balancing books on his head. After petitioner struck CD on the head, he placed the books down in front of CD and continued teaching. Petitioner was not angry and did not intend to hurt CD when he thumped CD with the books. However, *petitioner used a sufficient degree of force* to cause CD to have a slight headache. I conclude it was a slight headache because CD stayed in school the balance of the school day. I further find that petitioner's act embarrassed CD. I find that respondent has established the charges regarding the May 16, 2013 incident have been established by a preponderance of the evidence [sic].

The ALJ then turned to the question of whether respondent established by a preponderance of the evidence that its reasons for discharging petitioner were not arbitrary and capricious:

> . . . I conclude that respondent's decision to terminate petitioner's employment was not arbitrary or capricious. Petitioner was reprimanded for embarrassing or humiliating students in his classes three times before the current incident. Further Mr. Tucker counseled petitioner regarding his conduct and its effect on students. Mr. Tucker also engaged petitioner in one-on-one counseling with petitioner. Nonetheless, petitioner continued to engage in conduct that embarrassed students. Specifically, on May 16, 2013, petitioner rapped CD on the head with two books because he was fooling around with the books. This conduct caused CD to be somewhat embarrassed. Certainly CD should not have been fooling around with the books but that does not justify petitioner thumping CD with the books given

the fact that petitioner had been previously reprimanded and counseled not to engage in conduct that embarrasses or humiliates students. It appears that petitioner continues to [be] unaware of the impact or some of his conduct on students. Although petitioner has made notable contributions to the school and to the community, these factors are outweighed by petitioner's continued inappropriate conduct toward students. I conclude that respondent's decision to terminate petitioner's employment is not arbitrary or capricious.

Exercising his rights under MCL 38.104(4)(j), petitioner filed seven exceptions to the PDO. Relevant to this appeal is the first exception, wherein petitioner argued that, "The ALJ erred . . . by concluding that Respondent had established the Charges against Petitioner by a preponderance of the evidence."[4]

On April 24, 2014, the Commission issued its opinion. The Commission reversed the ALJ's ruling that respondent had proved the charges by a preponderance of the evidence, i.e., established that petitioner "slammed a book or books on the head of a student." The Commission wrote in relevant part:

The ALJ did not expressly find that [petitioner] "slammed" the book or books on CD's head. Rather, he variously characterized [petitioner]'s action as bumping, striking, thumping, and rapping CD's head.

* * *

Based on a careful review of the record and the PDO, we defer to the ALJ on the issue of whether the charged conduct involved one or two books.

* * *

After careful review of the record and the PDO, we find that the proven facts do not preponderate in support of [respondent]'s decision. We disagree with the ALJ's suggestion that [petitioner]'s testimony that he was "kidding around" was necessarily contrary to the facts. As noted above, the ALJ found that [petitioner] was not angry and that he did not intend to hurt CD. CD himself testified that [petitioner] was not angry with him and that [petitioner] did not intend to hurt him. In our view, a teacher "kidding around" is not necessarily at odds with the teacher having a disciplinary motive for his or her actions. Indeed, [petitioner] had previously been issued a written reprimand after he directed a misbehaving student to sit in a corner of the classroom and look at a fish tank for the remainder of the class period. According to the reprimand, that type of "public discipline humiliates and embarrasses students." In light of that disciplinary measure, we find that it would not have been unreasonable for

---

[4] Because the Commission granted this exception, it did not reach the other six raised by petitioner.

[petitioner] to attempt to respond to CD's misbehavior in a lighthearted manner, using actions that could be considered "kidding around" and that would not be mistaken for humiliating or embarrassing CD.

\* \* \*

In support of his conclusion that [respondent] sustained its burden of proof, the ALJ found that appellant's action caused CD to be embarrassed.

\* \* \*

Although the fact of CD's embarrassment was established, we disagree with the ALJ that the evidence established that it was caused by [petitioner]'s conduct. Based on the evidence, we find that it was just as likely that CD was embarrassed because of his own conduct.

As explained above, it was [respondent]'s burden to prove the charges by a preponderance of the evidence, i.e., to present admissible evidence that establishes a greater probability that the charges are true that that they are not. We agree with the ALJ that some degree of force is implied by the term "slam." The ALJ, however, did not find that [respondent] proved that [petitioner] "slammed" CD. Instead, the ALJ found that: 1) [petitioner] bumped, struck, thumped, or rapped CD's head with the books; 2) [petitioner]'s action caused CD to have a "slight headache;" and 3) [petitioner]'s action caused CD to be "somewhat embarrassed." [Petitioner] was not charged with embarrassing CD. In any event, for the above reasons, we find that the evidence does not preponderate in favor of a finding that [petitioner]'s conduct caused embarrassment to CD. In addition, the ALJ's failure to find that the charged act of "slamming" was proved is, in our view, indicative of the weakness in [respondent]'s proofs. It is significant that the ALJ found that [petitioner] was not angry and that he did not intend to harm CD, findings with which CD himself agreed.

\* \* \*

In our view, the fact that CD had a slight headache following [petitioner]'s action does not compel a finding that [petitioner] "slammed" him or that [petitioner]'s actions were other than a lighthearted attempt to respond to CD's conduct. [Petitioner] was behind CD at the time of the incident. [Respondent] presented the testimony of no witnesses who observed [petitioner]'s posture, his facial expression, the distance he raised the books before bringing them into contact with CD's head, or the speed with which he acted. As noted above, CD testified that [petitioner] was not angry and that he did not intended to hurt him, and the ALJ agreed. In light of the record in this case, we cannot reconcile these findings with a finding that the charge of "slamming" CD was proved by a preponderance of the evidence. On the contrary, our review of the record leaves us with a firm conviction that [respondent] did not present evidence that

-5-

preponderates in favor of a finding that [petitioner] engaged in objectionable behavior. On the contrary, we find that it is just as likely that he was attempting to respond in a lighthearted way to CD's conduct and that any headache cause to CD was purely accidental and unforeseen.

For all of these reasons, we find that [respondent] did not prove the charges by a preponderance of the evidence and we grant [petitioner]'s first exception. This resolution of the first exception is not based on a finding that either the testimony of CD or the testimony of [petitioner] was more credible. Rather, our resolution is based solely on a finding that there was not a preponderance of the evidence to support the charges.

Pursuant to this ruling, the Commission ordered petitioner to be reinstated with back pay. Respondent now appeals.

## II. ANALYSIS

Respondent argues that the Commission erred in concluding that respondent failed to establish the tenure charge at issue, i.e., that petitioner "slammed" CD in the head with two books, by a preponderance of the evidence.

A final decision of the tenure commission must be upheld if it is not contrary to law, is not arbitrary, capricious, or a clear abuse of discretion, and is supported by competent, material, and substantial evidence on the whole record. Substantial evidence is that which a reasonable mind would accept as adequate to support a decision; it is more than a scintilla but may be substantially less than a preponderance. This Court gives due deference to the expertise of an administrative agency, and will not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views. Review involves a degree of qualitative and quantitative evaluation of all the evidence that the tenure commission considered, rather than just those portions of the record supporting the tenure commission's decision. [*Lewis v Bridgman Pub Schs*, 279 Mich App 488, 495-496; 760 NW2d 242 (2008) (quotation marks and citations omitted); see also *Cona v Avondale Sch Dist*, 303 Mich App 123, 136, 140; 842 NW2d 277 (2013).]

Respondent first asserts that the Commission "impermissibly overruled the ALJ's credibility determination" that petitioner "slammed" the student in the head with two books. This argument fails because the Commission did not actually overrule a credibility determination of the ALJ.

As the Commission noted, the ALJ did not explicitly find that petitioner "slammed" the student in the head. Rather, he alternatively stated that petitioner "bumped," "struck," "thumped," or "rapped" CD, ultimately concluding that petitioner struck the student with a "sufficient degree of force." Indeed, the ALJ took significant care not to specifically find that petitioner "slammed" the book. At the same time, the ALJ did not fully accept petitioner's testimony that he merely "tapped" CD. Ultimately, the ALJ's conclusion appears to have rested

-6-

somewhere between the two terms. The gravamen of respondent's argument is that the ALJ found CD's version of events more credible than that of petitioner. This is not exactly true. While the ALJ certainly found CD more credible on particular issues, such as whether one or two books were balanced on his head, as to whether the book was "slammed," the ALJ clearly found neither party fully credible. As such, the Commission did not reject the ALJ's witness credibility findings as to whether the books were "slammed" or "tapped" because the ALJ determined that neither term applied. Indeed, the Commission wrote: "This resolution of the first exception is not based on a finding that either the testimony of CD or the testimony of [petitioner] was more credible. Rather, our resolution is based solely on a finding that there was not a preponderance of the evidence to support the charges." This declaration is supported by reviewing the Commission's opinion. The Commission, like the ALJ, did not find that petitioner "slammed" the books nor did it find that petitioner merely "tapped" CD. Thus, it did not refute any credibility determinations reached by the ALJ and respondent's argument on this point fails.[5]

Respondent next argues that the Commission's decision was not supported by substantial evidence on the record. Specifically, respondent argues that because many of the terms used by the ALJ were synonyms for "slammed," the Commission's reading of the PDO, i.e., that the ALJ did not find that petitioner "slammed" the books, was overly technical. This argument is without

---

[5] Moreover, while the Commission generally accords deference to the credibility determinations of the ALJ, that deference is not absolute. The Supreme Court has explicitly stated that the Commission reviews preliminary decisions of ALJs de novo, *Lewis v Bridgman Pub Schs*, 480 Mich 1000; 742 NW2d 352 (2007), and the Commission possesses the statutory authority to, "after review of the record and the exceptions, [] adopt, modify, or reverse the preliminary decision and order[,]" MCL 38.104(5)(k). Thus, to the extent the Commission reassessed the ALJ's credibility findings, that action, in itself, does not necessarily entitle respondent to reversal. The only binding authority allegedly to the contrary cited by respondent is *Mich Employment Relations Comm v Detroit Symphony Orchestra, Inc*, 393 Mich 116; 223 NW2d 283 (1974). However, that case did not *require* that a superior commission give absolute deference to an ALJ's credibility determinations nor require an appellate court to defer to an ALJ's credibility determinations over those of the superior commission. Indeed, although the ALJ's credibility findings were entitled to "due weight," the Court held:

> We do not require that the [ALJ]'s findings be given more weight than in reason in the light of judicial experience they deserve. . . . We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced [ALJ] who has observed the witnesses and lived with the case has drawn conclusions different from the [superior commission]'s than when he has reached the same conclusion. *Id*. at 127, quoting *Universal Camera Corp v Nat'l Labor Relations Bd*, 340 US 474, 496-497; 71 S Ct 456; 95 L Ed 2d 456 (1951).]

Thus, *Detroit Symphony* merely stands for the generally accepted proposition that appropriate deference on questions of witness credibility should be afforded to the factfinder who actually observed the testimony. Such appropriate deference need not be absolute.

merit. Contrary to respondent's position, the fact that the ALJ pointedly did not use the word "slammed," the word used in the tenure charges, demonstrates quite clearly that he did not find that the books had been slammed. The ALJ did find that the books had struck CD's head with some degree of force, indicating that the ALJ did not accept petitioner's account that he merely "tapped" CD. In other words, a fair reading of the PDO indicates that the ALJ found the degree of force exhibited to have been somewhere between "tapped" and "slammed."

Respondent extrapolates this argument into a claim that the Commission "speculated" that petitioner only "tapped" CD, contrary to the student's testimony. This argument oversimplifies the Commission's decision. As discussed, the Commission did not reject the testimony of either petitioner or CD and did not reweigh the ALJ's credibility findings. Rather, as quoted extensively above from its opinion, the Commission disagreed with the ALJ that, under the evidence presented, respondent proved the tenure charges by a preponderance of the evidence. The Commission relied, in part, on the absence of any evidence that petitioner acted with malice or intended to embarrass or harm CD. In fact, CD himself acknowledged that petitioner was not angry and did not intend to hurt him. The Commission also agreed with the ALJ's finding that being struck by the books caused CD to be embarrassed, and that petitioner had been reprimanded in the past for embarrassing students. However, the Commission disagreed with the ALJ's conclusion that petitioner's conduct was the cause of CD's embarrassment; it found instead "that it was just as likely that CD was embarrassed because of his own conduct[,]" i.e., misbehaving in class. It is undisputed that respondent bore the burden of establishing the tenure charges. The fact that the Commission disagreed with the ALJ that this legal burden had been met does not necessarily entitle respondent to reversal. The Commission has the express statutory authority to reject the preliminary decision of the ALJ in tenure cases. MCL 38.104(5)(k).

In sum, under the applicable standard of review, we are required to affirm the Commission's ruling. The Commission possesses the power to overturn an ALJ's decision after review de novo. *Lewis*, 480 Mich at 1000. The Commission did not reject the ALJ's credibility determinations but disagreed with his legal conclusions drawn from the evidence. We cannot say that the Commission's decision was contrary to law, arbitrary, capricious, a clear abuse of discretion, or unsupported by competent, material, and substantial evidence on the whole record. *Lewis*, 279 Mich App at 495-496. We agree with respondent's position that petitioner's classroom behavior raises serious concerns. Indeed, were we to review this case de novo, we might agree with the ALJ's conclusions. However, that is not the case; there was a factual and legal basis for the Commission's decision, which is the only one subject to our review, and we will not displace an administrative agency's choice between two reasonably differing views. *Id.*; see also *Widdoes v Detroit Pub Schs*, 218 Mich App 282, 286; 553 NW2d 688 (1996).

Affirmed.[6]

/s/ David H. Sawyer
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro

---

[6] Because we affirm the Commission's ruling that respondent failed to establish the tenure charges by a preponderance of the evidence, a requirement to discharge a tenured teacher, we need not address respondent's other arguments, i.e., that the termination was not arbitrary or capricious and addressing petitioner's other exceptions to the PDO.