PARKER v BRYON CENTER PUBLIC SCHOOLS BOARD OF
EDUCATION

Docket No. 198183. Submitted January 14, 1998, at Grand Rapids. Decided
May 8, 1998, at 9:15 A.M.

Steven Parker, a tenured teacher in the Byron Center Public Schools,
was discharged by the Byron Center Public Schools Board of Edu-
cation after a woman complained that, sixteen years earlier, Parker
initiated and maintained a sexual relationship with her while she
was a student in the Byron Center Public Schools. Parker appealed
to the State Tenure Commission. Following a hearing at which
Parker and the woman testified, the hearing officer issued a prelim-
inary decision and order upholding Parker's discharge for sexual
misconduct. Parker filed exceptions to the preliminary decision
and order with the commission, which adopted the preliminary
decision and order. Parker appealed to the Court of Appeals.

The Court of Appeals *held*:

1. The teacher tenure act, MCL 38.71 *et seq.*; MSA 15.1971 *et seq.*,
does not have a statute of limitations for charges relating to sexual
misconduct. If there is to be a statute of limitations, it must be
adopted by the Legislature, not created by the Court of Appeals.

2. *Lemmerman v Fealk*, 449 Mich 56 (1995), in which the
Supreme Court held that a statute of limitations for a civil action
alleging sexual abuse may not be tolled for the victim's "repressed
memory," does not apply to this case, in which there is not a stat-
ute of limitations, there was not "repressed memory," and personal
redress was not sought by the complainant.

3. Requiring a teacher to answer a charge concerning an event
that occurred during a previous school year is not fundamentally
unfair. While no time limit exists for bringing an allegation of sex-
ual misconduct under the teacher tenure act, an accused may be
entitled to dismissal of the charge if there is identifiable evidence
of prejudice to the ability to defend against the charge. However,
general comments about prejudice resulting from the witnesses'
fading memories, such as those made by Parker, are insufficient to
establish prejudice.

4. The hearing officer did not err in excluding as irrelevant evi-
dence regarding the woman's alleged sexual contact with Parker

following her graduation from high school and evidence of her sexual history with persons other than Parker. Parker cannot rely on exceptions to the rape-shield statute, MCL 750.520j(1); MSA 28.788(10)(1), as bases for the inclusion of such evidence because the statute and the exceptions apply to criminal prosecutions only and Parker did not make an offer of proof or demonstrate the relevance of such evidence.

5. Competent, material, and substantial evidence support the commission's finding of sexual misconduct.

Affirmed.

SCHOOLS — TEACHER TENURE ACT — SEXUAL MISCONDUCT — LIMITATION OF ACTIONS.

Past sexual misconduct by a tenured teacher involving a student, as charged in support of the discharge of the teacher pursuant to the teacher tenure act, is not subject to any statute of limitations; however, identifiable evidence of prejudice to the teacher's ability to defend against the charge might entitle the teacher to dismissal of the charge (MCL 38.71 *et seq.*; MSA 15.1971 *et seq.*).

*White, Przybylowicz, Schneider & Baird, P.C.* (by *William F. Young* and *Shirlee M. Bobryk*), for the appellant.

*Varnum, Riddering, Schmidt & Howlett LLP* (by *John Patrick White, Mary C. Bonnema,* and *Anthony R. Comden*), for the appellee.

Before: NEFF, P.J., and SAWYER and MURPHY, JJ.

NEFF, P.J. Steven Parker appeals as of right from an order and opinion of the State Tenure Commission discharging him from his position as a tenured teacher in the Byron Center Public School District. We affirm.

I

In September 1995, the superintendent of the Byron Center Public Schools received a letter from a woman alleging that appellant had engaged in a sexual relationship with her in the late 1970s while she was a

student in the district. After an investigation of the matter, the Board of Education of the Byron Center Public Schools initiated action under the teacher tenure act, MCL 38.71 *et seq.*; MSA 15.1971 *et seq.*, to terminate appellant's employment as a tenured teacher on the basis of the woman's allegations.[1] Appellant exercised his right under the act to contest the charges before the State Tenure Commission. MCL 38.104(1); MSA 15.2004(1). The hearing officer assigned to the case conducted a formal tenure hearing regarding the matter in January 1996 pursuant to MCL 38.104(2)-(5); MSA 15.2004(2)-(5).

The woman testified that appellant was her home-room teacher when she was in the fifth grade, and that appellant began to sexually abuse her when she was a student at Byron Center High School and he was a teacher at Rider School, an elementary school in the district. The woman testified that the sexual contact began on December 31, 1978, when appellant gave her a New Year's kiss after driving her home from baby-sitting his children. Soon thereafter, in January 1979, appellant's wife asked her to baby-sit the children for a few days while appellant was having ankle surgery. The woman testified that on the night that appellant returned home from the hospital, appellant negotiated the stairs with his crutches and came downstairs where she was sleeping on the couch, and that he again kissed her. According to the woman, appellant would also kiss and fondle her in the car almost every time appellant drove her home

---

[1] The charges filed by the board also included an allegation that appellant exposed himself to another female student during the summer of 1978 or 1979; however, that charge was ultimately dismissed for lack of evidence.

after baby-sitting, which was once or twice a month. The woman stated that she protested the activity on many occasions.

In February 1979, appellant telephoned the woman's mother and received her consent to excuse her daughter's absence from school to accompany appellant to a doctor's appointment. The woman testified that appellant picked her up from the high school at 1:00 P.M., took her out to dinner after the doctor's appointment, and that he kissed and fondled her breasts and genitals through her clothing. The woman stated that appellant asked to perform oral sex on her but she refused. The woman recalled that, as appellant was driving her home, he told her to hide her underwear so that her mother would not see any discharge that may have been present. The woman's mother confirmed that appellant did not return her daughter home until approximately 10:00 P.M. that evening.

The woman testified that appellant soon began engaging in oral sex and sexual intercourse with her. Early one morning when she was home alone,[2] appellant walked over to her home, which was only a few hundred yards from the school where appellant taught third grade. The woman testified that appellant laid her down on the living-room floor, undressed her, and performed oral sex on her. The woman stated that appellant continued to go to her house four or five mornings a month to have sexual intercourse with her. Appellant instructed her to leave the backyard light on when it was safe for him to come over,

---

[2] The woman's parents left for work at 6:00 A.M., and her sister frequently spent the night at the home of their older sister.

and he warned her not to tell anyone because her mother would be angry and his job would be in jeopardy.

The woman testified that the abuse ended after several months because she began to make herself unavailable to appellant. She explained that she did not come forward sooner because she blamed herself for what happened, but she finally realized that it was not her fault and she wanted to prevent appellant from hurting other children.

Appellant testified on his own behalf and denied that he ever kissed, fondled, or had any type of sexual relations with the woman. He further denied each of the specific allegations made by her, including her claim that he took her to a doctor's appointment or took her to dinner. Appellant admitted that he occasionally went to her house to borrow things in the morning and did eventually realize that her parents were not usually home. However, appellant denied that he ever went over to her house for the purpose of visiting her or to engage in sexual relations with her.

In May 1996, the hearing officer issued a preliminary decision and order concluding that the board proved by a preponderance of the evidence that appellant had engaged in sexual relations with the woman while she was a student of the district and that appellant's conduct warranted discharge. Pursuant to MCL 38.104(5)(j); MSA 15.2004(5)(j), appellant submitted exceptions to the preliminary decision and order of the hearing officer. The commission issued its final decision and order in July 1996, which upheld the preliminary decision. This appeal followed.

II

Appellant first argues that the commission erred in not dismissing the charges because the underlying events occurred in 1979, sixteen years before the charges were brought by the board. Appellant insists that because of the long time lapse between the alleged events and the charges, he has been unduly prejudiced in presenting a sufficient defense. We disagree.

A

The commission has considered this issue previously, and, although the decisions of the commission are not binding on this Court, we may choose to give them some deference. *DAIIE v Comm'r of Ins*, 119 Mich App 113, 120; 326 NW2d 444 (1982). In *Matson v City of Berkley School Dist Bd of Ed*, (88-25) the commission refused to allow evidence of sexual misconduct that took place twenty-three years before the filing of the charges. However, in two more recent cases, *Waara v Van Buren Public Schools Bd of Ed* (93-33) and *Bergerow v Kentwood Public Schools Bd of Ed*, (95-36), the commission allowed evidence of sexual misconduct that allegedly occurred approximately thirteen and twenty years, respectively, before the charges were filed. In the present case, the alleged sexual misconduct took place sixteen years before the charges were filed.

The Legislature is assumed to be aware of prior administrative interpretations of its acts, and legislative silence in the face of an agency's construction is construed as a consent to that construction. *Dykstra v Dep't of Natural Resources*, 198 Mich App 482, 489-490; 499 NW2d 367 (1993). Despite the commission's

decisions in *Waara* and *Bergerow*, the Legislature has not acted to include a statute of limitations in the teacher tenure act for charges relating to sexual misconduct. If there is to be a statute of limitations, it should be legislatively created; we are disinclined to act where the Legislature has not, particularly where the administrative holdings are soundly reasoned as they are in *Waara* and *Bergerow*.

B

Appellant relies on *Lemmerman v Fealk*, 449 Mich 56; 534 NW2d 695 (1995), to support his claim that it would be unjust and unreasonable to force him to defend against alleged events that occurred sixteen years ago. In *Lemmerman*, our Supreme Court held that, in civil actions brought by plaintiffs who alleged that they were sexually abused forty to fifty years before the actions were filed, neither the discovery rule nor the insanity grace period applied to toll the statute of limitations in these "repressed memory" cases. In so holding, the Court determined that the policy goals of the statute of limitations to prevent stale, fraudulent, or speculative claims outweighed the plaintiffs' rights to maintain their claims because of the lack of objective verification and indicia of reliability for their underlying claims. *Id.* at 74-77.

Contrary to appellant's argument, this case is significantly different from that in *Lemmerman*. First, as noted above, the Legislature has not set forth a statute of limitations for bringing charges against a teacher for sexual misconduct. Second, this is not a case of "repressed" memory. The woman did not "forget" what happened between herself and appellant; rather, she delayed coming forward because for years

she blamed herself for what happened. Thus, her account of the events is inherently more reliable than that of the plaintiffs in *Lemmerman* who were not conscious of the abuse for decades and then began to remember it.[3] Third, the plaintiffs in *Lemmerman* waited forty to fifty years to bring their civil claims, while the abuse in this case took place sixteen years before charges were brought by the board. Finally, the plaintiffs in *Lemmerman* were seeking personal redress for past sexual abuse, while the proceedings before the commission not only served to discipline appellant for past sexual abuse, but, perhaps more importantly, to prevent any future abuse of other students.

C

This Court has previously stated that requiring teachers to answer charges concerning events that occur during a previous school year is not fundamentally unfair. *Sutherby v Gobles Bd of Ed (After Remand)*, 132 Mich App 579, 583; 348 NW2d 277 (1984). In *Sutherby,* this Court stated:

> We find no instance in the present case supporting the claim of significant loss of a teacher's ability to defend himself due to the lapse of time. *While individual cases may occur in which the delay in bringing charges might render a dismissal unjust or unreasonable,* fundamental fairness can be achieved without creating a general rule forbidding

---

[3] We also note that independent corroboration of the woman's claims existed, albeit slight. For example, a neighbor testified that appellant often walked to the woman's house in the early morning hours when her parents were not home. Also, two individuals testified that the woman had confided in them at the time that a sexual relationship was occurring between her and appellant.

the consideration of charges based on events from a previ-
ous school year. [*Id.* at 583-584 (emphasis added).]

Like the Court in *Sutherby*, we decline to establish
a bright-line time limit for bringing allegations of sex-
ual misconduct under the teacher tenure act, particu-
larly when the Legislature has clearly chosen not to
impose a statutory time limit. If there is particular,
identifiable evidence of prejudice to a teacher's ability
to defend the charges,[4] the teacher may be entitled to
dismissal of the charges. However, a sexual predator,
particularly of young children, may not argue that he
should escape responsibility under the teacher tenure
act merely because time has passed.

With respect to this issue, we find persuasive the
reasoning of the court in *Fisher v Independent School
Dist No 622*, 357 NW2d 152 (Minn App, 1984):

"The fortuitous fact that the school board did not have
immediate knowledge of the alleged sexual relationship
with the sixteen-year old minor student is not the Board's
fault. There is no showing that the Board unduly delayed in
bringing this termination action after it had received knowl-
edge of the alleged occurrence. *By virtue of the nature of
the offense—sexual intercourse with a minor student of
the district—it may be considered doubtful whether such
conduct could ever be too remote in time.*" [*Id.* at 156, quot-
ing *Johnson v Independent School Dist No 294*, No 12305,
Dist Ct Mem (3d Judicial Dist Feb 12, 1980) (emphasis
supplied).]

In the present case, there has been no showing of
an inability to defend owing solely to the lapse of
time. To the contrary, appellant makes only general

---

[4] For example, where a key witness has died or is otherwise unavaila-
ble and there is no corroborating or circumstantial evidence to support
the victim's claims.

comments about prejudice resulting from the fading of various witnesses' memories. This is not enough. As the board correctly notes, it bore the burden of proof to show reasonable and just cause for discharging appellant. *Sutherby, supra* at 582. Time and faded memories make meeting that burden all the more difficult. Moreover, it is without question that the board acted promptly upon its receipt of the woman's letter alleging sexual misconduct by appellant.[5] Finally, as the court in *Fisher* noted, it is questionable whether conduct such as that engaged in by appellant would ever be too remote to support a tenured teacher's dismissal.

School boards such as the appellee in this case have a duty to do all they can to protect children from sexual and other kinds of misconduct. This duty outweighs any claim that the perpetrator may have that claims cannot go forward simply because of the passage of time.

III

Appellant next argues that the commission erred in upholding the hearing officer's exclusion of evidence regarding the woman's alleged sexual contact with appellant following her high school graduation and in excluding evidence of the woman's sexual history with individuals other than appellant. We disagree.

---

[5] Although the woman apparently told her sophomore-year history teacher about her sexual relationship with appellant, the teacher did not tell any member of the school administration about what the woman had confided in him.

A

Appellant's counsel alleged that the woman, in her deposition, stated that she had sexual contact with appellant after her graduation from high school. Appellant contended that he could disprove these allegations and posited that the evidence was relevant to the woman's credibility: if she would lie about sexual contact that took place in 1981, she would lie about sexual contact that took place in 1979.

The hearing officer properly held that the evidence was inadmissible because it was irrelevant. The woman's relationship with appellant in 1981 had no bearing on the charges brought against him, which concerned his relationship with the woman only while she was a student. On appeal, appellant claims that the woman's deposition testimony regarding her sexual contact with him in 1981 was admissible as a prior inconsistent statement because she testified at the hearing that her relationship with appellant ended in 1979 when she stopped making herself available to him. We need not address this issue, which was first raised in appellant's exceptions to the preliminary decision and order. See *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993) (issues first raised on appeal need not be addressed by this Court). In any event, the impeachment value of the excluded evidence, if permitted, would have been minimal. We find no error here.

B

The hearing officer granted the board's motion in limine regarding evidence of the woman's sexual history, other than that involving appellant, but

expressed his willingness to revisit the matter if appellant could make a particularized showing of how such evidence would be relevant. The commission upheld the decision of the hearing officer, stating that appellant failed to make a specific showing detailing the proposed evidence and demonstrating its relevance. Appellant now argues that the commission erred because he was denied the opportunity to question the woman during deposition or otherwise conduct discovery regarding her sexual history with persons other than him and thus could not make the particularized showing required by the commission.

Under the rape-shield statute, MCL 750.520j(1); MSA 28.788(10)(1), evidence of past sexual conduct with others is generally legally irrelevant. *People v Arenda*, 416 Mich 1, 10; 330 NW2d 814 (1982). Our Supreme Court has recognized, however, that in certain limited situations, such evidence may be relevant and its admission required to preserve a criminal defendant's Sixth Amendment right to confrontation. *People v Hackett*, 421 Mich 338, 348; 365 NW2d 120 (1984). For example, the evidence may be admissible for the narrow purpose of showing the complaining witness' bias, showing a complainant's ulterior motive for making a false charge, or showing that the complainant has made false accusations of rape in the past. *Id.* In addition, this Court has held that a defendant's "figment of the imagination" defense theory may be sufficiently intertwined with the defendant's Sixth Amendment right of confrontation so as to overcome the exclusionary effect of the rape-shield statute. *People v Byrne*, 199 Mich App 674; 678; 502 NW2d 386 (1993).

We first note that the evidence was permitted in these cases in order to preserve the criminal defendant's Sixth Amendment right to confrontation. Appellant is not a criminal defendant; therefore, his Sixth Amendment rights are not implicated. Furthermore, in order to gain admission of other sexual history for one of these narrow permissible purposes, a party is obligated to make an initial offer of proof with respect to the proposed evidence and to demonstrate its relevance. *Hackett, supra* at 350; *Byrne, supra* at 678. Appellant has failed to make such a particularized showing in this case before the hearing officer, the commission, or this Court. Contrary to appellant's argument, he was not entitled to embark on discovery of the woman's sexual relationships with people other than him without first making an appropriate offer of proof. Indeed, the very purpose of the exclusionary statute is to shield victims of sexual assault from questions that would harass or humiliate them and to guard against mere fishing expeditions. *Hackett, supra* at 350.

The commission properly upheld the hearing officer's exclusion of evidence regarding the woman's sexual history with individuals other than appellant.

IV

Plaintiff also argues that the commission's decision to terminate appellant's employment was not supported by competent, material, and substantial evidence on the record as a whole. We disagree.

A

This Court's review of the commission's findings is limited. We determine from the record whether there

was competent, material, and substantial evidence received by the Board or the commission, or both, to support the commission's findings. *Tomczik v State Tenure Comm*, 175 Mich App 495, 499; 438 NW2d 642 (1989). In doing so, we review the entire record, not just the portions that support the commission's findings. See *Great Lakes Sales, Inc v State Tax Comm*, 194 Mich App 271, 280; 486 NW2d 367 (1992). Substantial evidence is that which a reasonable mind would accept as adequate to support a decision; it is more than a scintilla but may be substantially less than a preponderance. *Tomczik, supra* at 499. Furthermore, deference must be given to the commission's determination of the credibility of witnesses who appeared before it. *Miller v Grand Haven Bd of Ed*, 151 Mich App 412, 422; 390 NW2d 255 (1986). Nonetheless, we conduct an independent assessment of whether the commission's determination of the credibility of the parties is supported by the evidence.

B

As with many cases involving allegations of sexual assault or abuse, this case was essentially a credibility contest between the woman and appellant. The hearing officer found that the woman testified in a straightforward manner and was more credible and more persuasive than appellant. The officer further stated that the woman's testimony was corroborated by other witnesses. In addition, the officer noted that the woman had intimate knowledge of certain aspects of appellant's personal life, which lent further support to her allegations. However, the officer believed that parts of appellant's testimony appeared forced.

The crux of appellant's claim is that the woman was not credible and that the evidence, taken as a whole, did not support a finding of sexual abuse by appellant. Both the hearing officer and the commission made exceptionally detailed findings of fact in support of their determinations that appellant had engaged in sexual activity, including repeated instances of sexual intercourse, with a student. Without question, this conduct provides a sufficient basis for the commission's decision to discharge appellant. We have carefully reviewed the record and conclude that the commission's findings were supported by competent, material, and substantial evidence on the record.

Affirmed.