CONA v AVONDALE SCHOOL DISTRICT

Docket No. 310893. Submitted November 5, 2013, at Detroit. Decided
      November 12, 2013, 9:00 a.m. Leave to appeal sought.

The superintendent of the Avondale School District filed written
   tenure charges with the Avondale School District Board of Educa-
   tion, alleging that Frank Cona, a teacher employed by the district,
   had been convicted of operating a motor vehicle while impaired,
   had been placed on probation, and had violated his probation twice
   by using marijuana and alcohol and been given the choice of a jail
   sentence or an additional year of probation. The superintendent
   alleged that Cona had chosen to serve a jail sentence, had been
   sentenced to 30 days in jail, and had been unable to perform his
   teaching duties for 17 days during his incarceration. The superin-
   tendent noted that Cona had given false reasons for his absence
   and that Cona's effectiveness as a teacher had been compromised
   after some of his students learned of his incarceration. The
   superintendent requested that the board proceed on the written
   charges, which called for Cona's discharge from employment, in
   accordance with the teachers' tenure act, MCL 38.71 *et seq.* The
   board voted to proceed on the tenure charges and to discharge
   Cona. Cona filed a claim of appeal with the State Tenure Commis-
   sion. Following a hearing, the hearing referee issued a preliminary
   decision and order that, in part, determined that the board's
   decision to discipline Cona was not arbitrary or capricious. The
   hearing referee recommended that Cona be reinstated to his
   employment at a reduced salary. The parties filed exceptions and
   cross-exceptions to the preliminary decision and order. The State
   Tenure Commission granted in part and denied in part the parties'
   exceptions and eventually entered a final decision and order
   discharging Cona from employment. The Court of Appeals granted
   Cona's application for leave to appeal.

The Court of Appeals *held*:

1. The State Tenure Commission correctly applied the "not
   arbitrary or capricious" standard contained in MCL 38.101(1),
   as amended, effective July 19, 2011. Although the conduct that
   supported the charges against Cona occurred before July 19,
   2011, the written tenure charges were brought against Cona

more than a month after the amendment of the statute was effective. Although the retrospective application of a law is improper when it would take away or impair a vested right acquired under an existing statute, Cona cannot demonstrate that he had any such vested right in this case. Until the tenure charges were actually filed, Cona had no more than a mere expectancy that any particular statutory standard would be applied to his conduct.

2. Although the written tenure charges did not contain any allegations concerning Cona's use of marijuana or that his conduct had undermined the school district's substance-abuse policies, evidence regarding Cona's use of marijuana and whether his conduct undermined the district's substance-abuse policies was properly admitted. The teachers' tenure act does not require that the evidence conform strictly to the written allegations. Generally, the parties may present any evidence at the hearing that is relevant to an issue under consideration, as long as it is not otherwise inadmissible. The State Tenure Commission properly considered evidence regarding these issues, which were both included in the school district's statement of exceptions to the referee's preliminary decision and order and based on the evidence presented at the hearing.

3. The State Tenure Commission did not err by determining that Cona's conduct had had an adverse effect on the school community and environment. There was competent, material, and substantial evidence to support the commission's determination.

4. There is no merit to Cona's argument that the State Tenure Commission erred by determining that evidence of the parties' settlement negotiations was inadmissible. Cona failed to demonstrate a sufficient basis for admitting the evidence.

5. The school district had principled reasons for discharging Cona that were not arbitrary or capricious and were not based on prejudice, animus, or improper motives. The State Tenure Commission's determination that the district's reasons were not arbitrary or capricious within the meaning of MCL 38.101(1), as amended, was authorized by law and supported by competent, material, and substantial evidence on the whole record.

Affirmed.

1. STATUTES — RETROSPECTIVE APPLICATION — VESTED RIGHTS.

The retrospective application of a law is improper when it would take away or impair a vested right under an existing statute.

2. TEACHERS' TENURE ACT — TENURE CHARGES — HEARINGS — EVIDENCE.

   The parties may present any evidence that is relevant to an issue under consideration at a hearing regarding tenure charges against a teacher conducted in accordance with the teachers' tenure act, as long as the evidence is not otherwise inadmissible; the act does not require that the evidence conform strictly to the written allegations (MCL 38.71 *et seq.*).

3. TEACHERS' TENURE ACT — TENURE CHARGES — WORDS AND PHRASES — ARBITRARY — CAPRICIOUS.

   A school district may discharge a teacher only for a reason that is not arbitrary or capricious; "arbitrary" means fixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances, or significance; "capricious" means apt to change suddenly, freakish, or whimsical; a reason that is based on prejudice, animus, or improper motives is arbitrary and capricious (MCL 38.101[1]).

*Law Offices of Lee & Correll* (by *Michael K. Lee* and *Megan R. McGown*) for petitioner.

*Clark Hill PLC* (by *Mark W. McInerney*) for respondent.

Before: OWENS, P.J., and JANSEN and HOEKSTRA, JJ.

JANSEN, J. Petitioner appeals by leave granted[1] the final decision and order of the State Tenure Commission (Commission) discharging him from employment. For the reasons set forth in this opinion, we affirm.

I. BASIC FACTS AND PROCEDURAL HISTORY

Petitioner began working for respondent during the

---

[1] "A party aggrieved by a final decision and order of the tenure commission may appeal the decision and order to the court of appeals in accordance with the Michigan court rules . . . ." MCL 38.104(7). Final decisions of the State Tenure Commission are appealable to this Court by leave granted. MCR 7.203(B)(3); *Watt v Ann Arbor Bd of Ed,* 234 Mich App 701, 705-707; 600 NW2d 95 (1999).

1997-1998 school year, and obtained tenure during the
2001-2002 school year. Petitioner taught social studies
at Avondale High School at the time of the events
underlying this case.

The tenure charges against petitioner arose out of his
17-day absence from school in April and May 2011. In
February 2010, petitioner was arrested for operating a
motor vehicle while intoxicated. In May 2010, petitioner
pleaded guilty to the lesser charge of operating a motor
vehicle while impaired and was sentenced to 12 months
of probation. The conditions of petitioner's probation
required that he refrain from using alcohol and nonpre-
scription drugs and submit to random drug and alcohol
testing. Later in May 2010, petitioner tested positive for
marijuana. Then, in August 2010, petitioner tested
positive for alcohol. Petitioner was charged with a
probation violation and ultimately pleaded guilty to
that charge. In September 2010, the terms of petition-
er's probation were amended to require twice weekly
drug and alcohol screening.

In February 2011, petitioner admitted using alcohol.
In addition, petitioner again tested positive for mari-
juana. In April 2011, petitioner's probation officer filed
a motion alleging a new probation violation. Petitioner
was directed to appear in district court for the alleged
probation violation.

Petitioner appeared before the district court on
Wednesday, April 13, 2011. This was a school day, and
petitioner reported to respondent that his absence from
work was due to illness. Petitioner was offered a choice
between jail time and an additional year of probation.
Petitioner chose jail because he believed that his proba-
tion officer would recommend a 15-day sentence and
that he would be permitted to serve the sentence on

weekends, thereby allowing him to continue teaching during the week.[2] However, petitioner was mistaken. After pleading guilty to the charge of violating his probation, petitioner was sentenced to 30 days in jail. The district court ordered that his sentence begin immediately.

Petitioner was permitted one telephone call after he was sentenced. He called his ex-wife, Deborah Cona (Cona), and instructed her how to use AESOP, the computer system used by respondent's teachers to report their absences. Petitioner also gave Cona his confidential AESOP password. Petitioner asked Cona to enter "personal days" in the AESOP computer system to cover his absence. Cona attempted to do this, but the AESOP system would not allow her to enter the personal days as requested by petitioner. Instead, Cona entered "family illness" as the reason for petitioner's absence, believing that this was the best option because the family illness designation was for unpaid leave.

During a 30-second telephone call on April 16, 2011, petitioner instructed Cona to use AESOP again to enter a leave of absence for him. When Cona attempted to do this, "leave of absence" was not an available option. Instead, Cona reported in the AESOP system that petitioner's father was ill. Petitioner and Cona spoke again on April 17, 2011. Cona told petitioner that she had reported that his father had had a stroke and that petitioner had gone to Florida. Petitioner told Cona to go to respondent's superintendent and tell him the

---

[2] A condition of petitioner's continued probation would have required him to remain in Michigan. Petitioner has two adult children who live outside the state. Petitioner apparently wanted the freedom to leave Michigan to visit his children.

truth. On Tuesday, April 19, 2011, Cona visited the superintendent, Dr. George Heitsch, and told him what had happened.

According to Avondale High School Principal Frederick Cromie, petitioner's incarceration in the Oakland County jail was then discovered by the students. One student learned of petitioner's incarceration from his brother, who was in jail at the same time as petitioner. The information spread quickly among the students. Cromie did not know who was actually responsible for spreading the stories at school.

Petitioner was released from jail on the night of Friday, May 6, 2011, or the early morning of Saturday, May 7, 2011. He called Heitsch on the following Monday and they agreed to meet. Petitioner expressed a desire to return to work immediately. However, after the meeting, petitioner was placed on administrative leave for the remainder of the 2010-2011 school year.

On June 22, 2011, Heitsch sent petitioner a letter stating that "[p]ending the successful resolution of [his] suspension," petitioner would be placed as a social studies teacher in the middle school for the 2011-2012 school year. The parties then entered into settlement negotiations, but the negotiations eventually broke down and no resolution was ever reached.

On September 6, 2011, Heitsch filed written tenure charges against petitioner with respondent's board of education (the Board). See MCL 38.102. In the written charges, Heitsch explained the circumstances of petitioner's original impaired-driving conviction and petitioner's two probation violations. Heitsch also explained that petitioner had missed work from April 13, 2011, through May 9, 2011, because of his incarceration, and noted that petitioner had given false reasons for his absence. Heitsch alleged that the students had

learned of petitioner's incarceration and that "[a]s a consequence, [petitioner's] moral authority as a teacher [h]as been substantially compromised, which has affected his ability to be an effective teacher." The tenure charges went on to allege:

6. [Petitioner's] unprofessional and illegal conduct has had an adverse impact on the educational and learning environment of Avondale High School. First, his incarceration resulted in him being unable to teach school for approximately a month, or about 19 school days. While a substitute teacher was retained to fill in on these days, the instruction received by students in these circumstances obviously suffered. Moreover, as previously noted, [petitioner] could have chosen to extend his probation and not miss any school days to teach students, but he instead chose jail, knowing full well that his students would be deprived of his services as a teacher for an extended period of time.

7. [Petitioner's] unprofessional and illegal conduct also has had an adverse impact on the educational and learning environment of Avondale High School in another way. It is a teacher's duty to model appropriate behavior. A professional teacher in Michigan who commits a misdemeanor, violates probation, is incarcerated, and as a result misses several weeks of teaching, is not comporting himself in a manner consistent with the standard to which teachers are reasonably held. Moreover, District teachers, especially those at the high school, are expected to support and promote the education of students about the dangers of alcohol and drug abuse, and of operating a motor vehicle while impaired by, or under the influence of, alcohol and/or drugs. [Petitioner's] ability to effectively support the District's educational mission in this regard has been completely undercut by his own disregard for these principles.

8. [Petitioner's] initial use of alcohol prior to operating a motor vehicle, his subsequent use of alcohol in violation of his probation, the consequential jail time and missed days of work, and public knowledge of his conduct, especially by

students, provide more than adequate basis for his dismissal under MCL § 38.101(1).

9. Finally, [petitioner's] record with the District over his approximately 13 years in the District has not been exemplary. He has been disciplined in the past. For example, on October 25, 2007, he received a written reprimand for making a statement to one of his students that was essentially as follows: "If I held a gun to your head, it still wouldn't make you shut up, would it?" Given the seriously unprofessional, illegal, and violative conduct detailed above related to his incarceration, as well as [petitioner's] other past behaviors, I have determined that [petitioner] can no longer be effective in contributing in a positive way to the educational and learning environment of Avondale High School and the District as a whole.

Heitsch requested that the Board proceed on the written tenure charges, which called for petitioner's discharge from employment, in accordance with the teachers' tenure act (the Act), MCL 38.71 *et seq*. The Board voted unanimously to proceed on the tenure charges and to discharge petitioner. See MCL 38.102.

On September 27, 2011, petitioner filed a claim of appeal with the Commission. See MCL 38.104(1). A hearing was conducted before a hearing referee in late November 2011. The hearing referee issued his preliminary decision and order on March 12, 2012.

The hearing referee first addressed the proper statutory standard for reviewing respondent's decision to discharge petitioner. This issue arose because the Act had been amended by 2011 PA 100, effective July 19, 2011, and the amendment had changed the applicable standard. Prior to July 19, 2011, MCL 38.101, as amended by 2005 PA 136, effective January 1, 2006, had stated in relevant part: "Except as otherwise provided in section 1a of this article, discharge or demotion of a teacher on continuing tenure may be made only for

*reasonable and just cause* and only as provided in this act." (Emphasis added.) The 2011 amendment modified the language of MCL 38.101 and added subsections (1) and (2). Subsection (1) now states: "Except as otherwise provided in section 1a of this article, discharge or demotion of a teacher on continuing tenure may be made only for *a reason that is not arbitrary or capricious* and only as provided in this act." (Emphasis added.)

Petitioner had argued that because the tenure charges were based on conduct that occurred before July 19, 2011, the "reasonable and just cause" standard of the former MCL 38.101 should be applied. In contrast, respondent had asserted that the "not arbitrary or capricious" standard of MCL 38.101(1), as amended, should be applied because the tenure charges had been brought after the amendment took effect. The hearing referee agreed with respondent and applied the amended standard.

The hearing referee determined that neither petitioner's 2010 conviction nor his first probation violation had a direct nexus to his responsibilities as a teacher. With regard to petitioner's second probation violation and the proceedings of April 13, 2012, the hearing referee noted that petitioner would not have missed any work if he had simply agreed to an additional year of probation rather than jail time.

Next, the hearing referee determined that petitioner's "conduct of providing his wife with his confidential [AESOP password] and resultant false information being entered into the system warrants discipline." The referee opined that there was a direct nexus between petitioner's absence from school for 17 days and his responsibility, as a teacher, to be present in the classroom. The referee found that this had adversely affected petitioner's students and the school, and that it

justified discipline. The referee ultimately determined that the Board's decision to discipline petitioner was "not arbitrary or capricious." See MCL 38.101(1), as amended.

To determine the appropriate level of discipline, the hearing referee considered each paragraph of the written tenure charges. The referee ultimately concluded:

> There is a direct nexus between [petitioner's] role in providing false information to the district via AESOP and [his] election to serve a jail sentence in lieu of serving [an] additional year on probation, which election caused [petitioner] to be absent from school for 17 days. To the extent that the proposed termination of [petitioner's] employment relies on conduct not connected to his teaching responsibilities, the district's reason to terminate [his] employment is arbitrary and capricious. [However, petitioner] should be disciplined for sharing his password in violation of district policy, for entry of false information into AESOP and for his absence from school. Because [petitioner's] primary misconduct relates to [his] absence from school it is incongruous to suspend [him] from his teaching duties at school as discipline. Reinstating [petitioner] to his employment at a reduced salary is appropriate discipline.

Pursuant to MCL 38.104(5)(j) and (k), both parties timely filed exceptions and cross-exceptions to the referee's preliminary decision and order. On May 31, 2012, the Commission issued its final decision and order. See MCL 38.104(5)(m).

The Commission addressed petitioner's first exception, in which petitioner argued that the referee had improperly applied the amended "not arbitrary or capricious" standard of MCL 38.101(1), as amended. The Commission denied this exception, concluding that the amended "not arbitrary or capricious" standard applied in this case because the written tenure charges were not filed until after the statutory amendment took effect.

After an extensive review of the testimony presented before the referee, the Commission denied petitioner's second exception and concluded that the referee had not erred by finding that petitioner's conduct adversely affected the school community. The Commission noted that "[t]he evidence established that [petitioner's] illegal conduct was at odds with the high school's efforts to convey a strong message against drinking and driving and with the district's reasonable expectation that teachers model appropriate behavior." The Commission further explained:

> [T]he importance of substance abuse education in Michigan schools and [respondent's] strong message against drinking and driving provide a direct nexus between [petitioner's] illegal conduct and his responsibilities as a teacher. [Petitioner] can reasonably be held accountable for public knowledge of his illegal conduct, which was a clear violation of his responsibility to model appropriate behavior.

The Commission further determined that several substitute teachers had been required to cover for petitioner during his term of incarceration and that this had disrupted the learning process for the students in petitioner's classes. It also addressed the evidence that petitioner had initially provided false reasons for his absence from work. In particular, the Commission found that petitioner's initial report that he was on sick leave "was a deliberate, dishonest act that was inconsistent with modeling the behavior that is reasonably expected of professional educators and that undermines the trust that is essential in the relationship between a teacher and school administrators." The Commission concluded that respondent had sufficiently established that petitioner's conduct adversely affected the school community. The Commission therefore denied petitioner's second exception.

Petitioner's third exception dealt with the referee's finding that he had shared AESOP information with Cona and had directed her to enter false information into AESOP. Petitioner also challenged the referee's exclusion of evidence concerning the parties' settlement negotiations. The Commission determined that petitioner was accountable for Cona's entry of false information, but found "significant circumstances that mitigate the seriousness of this infraction." The Commission concluded that petitioner's sharing of his AESOP password with Cona did not constitute misconduct for which he should be disciplined. However, the Commission concluded that petitioner's 17-day absence "clearly support[ed] discipline," and that the referee had properly excluded evidence of the settlement negotiations.

Petitioner's fourth exception challenged the referee's factual finding that respondent had previously disciplined him. The Commission denied this exception, concluding that the referee's decision was not based on any prior disciplinary incidents.

Respondent filed exceptions as well. For instance, respondent challenged the referee's determination that it had the burden of proving that its decision to discipline petitioner was not arbitrary or capricious. The Commission agreed with the referee and denied this exception.[3] Respondent also challenged the referee's findings concerning the appropriate level of discipline to impose on petitioner. The Commission ultimately determined that the referee had erred by failing to

---

[3] In proceedings before the Commission, the respondent has the burden of establishing that its stated reasons for disciplining a teacher are "not arbitrary or capricious" within the meaning of MCL 38.101(1), as amended. See *Satterfield v Grand Rapids Pub Sch Bd of Ed*, 219 Mich App 435, 437; 556 NW2d 888 (1996).

consider petitioner's original conviction and first probation violation when determining the appropriate form of discipline.

In another exception, respondent argued that the referee had erred by failing to consider that petitioner's second probation violation was based, at least in part, on his use of marijuana. Petitioner argued that because the written tenure charges had not referred to his marijuana use, the referee correctly declined to consider it. The Commission reasoned:

> The key element of the charge was [petitioner's] violation of the terms of his probation. It was not necessary that [respondent] list every basis for the violation in the charges. During the hearing, evidence was presented that the violation was based on both alcohol and marijuana use. Dr. Heitsch testified about the district's efforts to educate students about substance abuse, and Mr. Cromie testified about the significant negative effect of [petitioner's] use of marijuana. We agree with [respondent] that the evidence of [petitioner's] marijuana use is relevant and it is taken into consideration in our review of the issue of the appropriate level of discipline.

Respondent also challenged the referee's failure to consider whether petitioner's original conviction and probation violations had undermined the school's anti-drug and anti-alcohol efforts. The Commission essentially agreed with respondent, noting that "[respondent's] substance abuse efforts are relevant in determining the seriousness of [petitioner's] conduct, and our discussion of the appropriate level of discipline takes into account the incongruity between those efforts and [petitioner's] conduct."

Respondent's final exception challenged the referee's determination of the appropriate level of discipline to be imposed. The Commission stated that the referee had found that "since [petitioner's] primary misconduct

was his absence from school, it would be 'incongruous' to impose discipline that removed him from his teaching duties." The Commission concluded that the referee's reasoning was flawed, noting:

> Presence on the job is an employee's fundamental obligation. . . . A tenured teacher's unauthorized or excessive absences have supported a finding of reasonable and just cause for discharge. . . . [T]he fact that [petitioner] was absent for 17 days is unquestionably a relevant consideration and there is nothing incongruous about suspending or discharging a teacher due to absences.

In the end, the Commission concluded that respondent had proved the allegations contained in the tenure charges by a preponderance of the evidence and that respondent's stated reasons for discharging petitioner were neither arbitrary nor capricious. In its final decision and order dated May 31, 2012, the Commission granted in part and denied in part the parties' exceptions, and ordered petitioner's discharge.

We granted petitioner's application for leave to appeal on March 19, 2013. *Cona v Avondale Sch Dist*, unpublished order of the Court of Appeals, entered March 19, 2013 (Docket No. 310893).

## II. STANDARDS OF REVIEW

We must uphold a final decision of the Commission if it is authorized by law and is supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; see also *Widdoes v Detroit Pub Sch*, 242 Mich App 403, 408; 619 NW2d 12 (2000); *Nolte v Port Huron Area Sch Dist Bd of Ed*, 152 Mich App 637, 646; 394 NW2d 54 (1986). "[W]e review the entire record, not just the portions that support the commission's findings." *Parker v Byron Ctr Pub Sch Bd of Ed*, 229 Mich App 565, 578; 582 NW2d 859 (1998).

"[W]hether a statute applies in a particular case is a question of law that we review de novo." *Heritage Resources, Inc v Caterpillar Fin Servs Corp*, 284 Mich App 617, 632; 774 NW2d 332 (2009). We similarly review de novo as a question of law whether the Legislature's amendment of MCL 38.101(1) applies retrospectively. *Brewer v A D Transport Express, Inc*, 486 Mich 50, 53; 782 NW2d 475 (2010).

### III. APPLICABLE STATUTORY STANDARD

We conclude that the Commission correctly applied the amended "not arbitrary or capricious" standard of MCL 38.101(1), as amended. As noted previously, MCL 38.101 was amended, effective July 19, 2011. See 2011 PA 100. Prior to July 19, 2011, MCL 38.101 had prescribed a "reasonable and just cause" standard. The 2011 amendment modified the statute, which now prescribes a "not arbitrary or capricious" standard.

Petitioner argues that, because the underlying conduct that formed the basis of the tenure charges against him occurred before July 19, 2011, the Commission should have applied the "reasonable and just cause" standard of the former MCL 38.101. We disagree. Although petitioner's conduct occurred before July 19, 2011, the written tenure charges were brought on September 6, 2011, more than a month after the effective date of the amendment. Whereas the retrospective application of a law is improper when it would take away or impair a vested right acquired under an existing statute, *Morgan v Taylor Sch Dist*, 187 Mich App 5, 9-10; 466 NW2d 322 (1991), petitioner cannot demonstrate the existence of any such vested right in this case. "It is the general rule that that which the legislature gives, it may take away. A statutory defense, or a statutory right, though a valuable right, is not a

vested right, and the holder thereof may be deprived of it." *Lahti v Fosterling*, 357 Mich 578, 589; 99 NW2d 490 (1959). Until the tenure charges against petitioner were actually filed, petitioner had no more than a mere expectancy that any particular statutory standard would be applied to his conduct. See *Morgan*, 187 Mich App at 12; see also *Detroit v Walker*, 445 Mich 682, 700; 520 NW2d 135 (1994). The Commission properly applied the amended "not arbitrary or capricious" standard of MCL 38.101(1) in this case.

IV. MARIJUANA USE AND OTHER UNCHARGED ALLEGATIONS

Petitioner argues that the Commission erred by considering his positive tests for marijuana and the question whether his conduct undermined respondent's substance-abuse policies because these issues were not alleged in the written tenure charges. We disagree.

We acknowledge that the written tenure charges did not contain any allegations concerning petitioner's marijuana use or positive tests for marijuana. Nor did the written charges allege that petitioner's conduct undermined respondent's substance-abuse policies. "All charges against a teacher shall be made in writing, signed by the person making the charges, and filed with the . . . board, and a copy of the charges shall be provided to the teacher." MCL 38.102. However, it does not follow that the hearing referee may not consider evidence beyond the scope of the original written charges. See *Sutherby v Gobles Bd of Ed (After Remand)*, 132 Mich App 579, 589; 348 NW2d 277 (1984). Generally, the parties may present any evidence at the hearing that is relevant to an issue under consideration, as long as it is not otherwise inadmissible. See MCL 24.275; MCL 38.104(4); see also *Sutherby v Gobles Bd of Ed*, 73 Mich App 506, 510; 252 NW2d 503 (1977). This includes

both testimony and documentary evidence. See MCL 38.104(5)(d) and (f). The Act does not require that the evidence conform strictly to the written allegations. Evidence concerning petitioner's positive tests for marijuana, and whether his conduct infringed on or undermined respondent's substance-abuse policies, was properly introduced at the hearing despite the fact that these issues were not specifically mentioned in the written tenure charges. See *Sutherby*, 132 Mich App at 589.

It is true that "[t]he tenure commission shall not hear any additional evidence and its review shall be limited to consideration of the issues raised in the exceptions based solely on the evidence contained in the record from the hearing." MCL 38.104(5)(m). However, the Commission did not hear any new evidence concerning petitioner's marijuana use and alleged infringement of respondent's substance-abuse policies. The Commission considered only the evidence that was presented at the hearing before the referee. Moreover, these matters were raised in respondent's exceptions to the referee's preliminary decision and order. In its statement of exceptions filed on April 3, 2012, respondent challenged several of the referee's findings of fact. Respondent specifically observed that "the [referee] seems to have overlooked the fact that . . . [petitioner] had failed a test for marijuana." Respondent also took issue with "the [referee's] failure to consider . . . the fact that [petitioner's] convictions and probation violations undercut [respondent's] consistent anti-drug and anti-alcohol messages." We conclude that the Commission properly considered petitioner's positive tests for marijuana and the question whether petitioner's conduct undermined respondent's substance-abuse policies—issues that were both included in respondent's statement of excep-

tions and based on the evidence presented at the hearing. MCL 38.104(5)($l$) and (m).

V. ADVERSE EFFECT ON THE SCHOOL COMMUNITY

Petitioner also argues that the Commission erred by determining that his conduct had an adverse effect on the school community and environment. Again, we disagree.

Petitioner asserts that because his conduct occurred away from school property and outside regular school hours, the Commission's determination that his actions adversely affected the school community was not supported by competent, material, and substantial evidence. He also asserts that there was no evidence to establish that his conduct had an adverse effect on the students or their learning environment. However, there was evidence that petitioner's 17-day absence necessitated the use of various substitute teachers and hampered the learning process for the students in his classes. There was also evidence that the students who discovered petitioner's incarceration had planned protests and other potentially disruptive activities. Lastly, there was at least some evidence to suggest that the widespread knowledge of petitioner's conduct posed a threat to the school's anti-alcohol efforts.

Petitioner's challenge is simply unconvincing. "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision; it is more than a scintilla but may be substantially less than a preponderance." *Parker*, 229 Mich App at 578. This Court may not substitute its judgment for that of the Commission, even if we would have reached a different result in its place. *Sutherby*, 132 Mich App at 589; see also *Black v Dep't of Social Servs*, 195 Mich App 27, 30; 489 NW2d 493 (1992). Heitsch specifically testified that petition-

er's conduct was contrary to respondent's substance-abuse policies, and other witnesses testified regarding the planned protests by the students. There was competent, material, and substantial evidence to support the Commission's determination that petitioner's conduct had adversely affected the school community and environment.

### VI. EVIDENCE OF SETTLEMENT NEGOTIATIONS

Petitioner argues that the Commission erred by concluding that evidence of the parties' settlement negotiations was inadmissible. This argument is without merit. Before Heitsch filed the written tenure charges, the parties were engaged in settlement negotiations. During that time, respondent notified petitioner of a teaching assignment for the following school year. It appears that petitioner did not accept the offer because it required him to repay $1,500 to respondent.

Petitioner contends that evidence of the settlement negotiations should have been admitted to show that respondent had originally intended to continue his employment and assign him to another position within the district for the 2011-2012 school year. He also contends that he should have been permitted to introduce this evidence to impeach Heitsch's credibility.

As petitioner correctly notes, MRE 408 precludes the admission of "[e]vidence of conduct or statements made in compromise negotiations," but "does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness . . . ." However, the fact that Heitsch initially offered petitioner a teaching assignment for the 2011-2012 school year, but then filed tenure charges against him, does not constitute evidence of bias. Heitsch simply attempted to work with petitioner. Once the

negotiations fell through, Heitsch moved forward with tenure charges and sought petitioner's discharge. As the Commission correctly noted, "even assuming that evidence of a settlement offer may be admissible for impeachment purposes, the record . . . contain[s] no allegations of fact that call into question the testimony of Dr. Heitsch or Mr. Cromie." Petitioner has not demonstrated a sufficient basis for admitting evidence regarding the settlement negotiations. See MRE 408; MCL 24.275; MCL 38.104(4).

### VII. DISCHARGE OF PETITIONER

Lastly, petitioner argues that the Commission erred by ordering his discharge. He contends that a less severe penalty, such as that recommended by the hearing referee, would have been more appropriate. We perceive no error with respect to this issue.

The Commission provided the following detailed reasons, among others, for its decision to uphold respondent's reasons for discharging petitioner:

> Based on our review of the record, we do not find that [respondent's] decision to discharge [petitioner] was based on a reason that is arbitrary or capricious. Many of the factors that are supported by the evidence and which provide a reasonable explanation for the decision have long been considered relevant in fashioning an appropriate discipline for professional misconduct. . . . It is not unreasonable for [respondent] to have significant concerns, based on [petitioner's] deliberate and criminal conduct, about [petitioner's] ability to act as a role model and to be a credible messenger of the district's strong substance abuse message. [Petitioner's] false claim of a medical reason for his absence on April 13, 2011, contradicts the district's expectation of honesty. In addition, the remaining 16 days of absence could have been avoided if [petitioner] had opted for an extension of his probation, and his 17 day

> absence disrupted the educational process for his students. Further, there was no evidence of efforts . . . [by petitioner] to address [his] issues of alcohol or illegal drug use.
>
> There are some factors that would support a less drastic level of discipline, including the evidence of [petitioner's] teaching competence. But our duty is not to fashion the penalty that we ourselves would prefer but to review the controlling board's decision for arbitrariness and capriciousness. Under this standard of review, we find that the [referee] erred in declining to order [petitioner's] discharge.

Respondent had the burden of establishing a factual basis for discharging petitioner. See *Comstock Pub Sch v Wildfong*, 92 Mich App 279, 284; 284 NW2d 527 (1979). As noted earlier, under the standard of MCL 38.101(1), as amended, a school district may discharge a teacher "only for a reason that is not arbitrary or capricious . . . ." " 'Arbitrary means fixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances or significance, and capricious means apt to change suddenly, freakish or whimsical[.]' " *Mich Farm Bureau v Dep't of Environmental Quality*, 292 Mich App 106, 141; 807 NW2d 866 (2011), quoting *Nolan v Dep't of Licensing & Regulation*, 151 Mich App 641, 652; 391 NW2d 424 (1986). For instance, a reason is arbitrary and capricious if it is based on prejudice, animus, or improper motives. See *Mich Farm Bureau*, 292 Mich App at 145.

Respondent had principled reasons for discharging petitioner from employment. The written tenure charges were developed with reference to specific circumstances and conduct that, in Heitsch's professional judgment, affected petitioner's ability to continue serving as a teacher. Petitioner had been convicted of

driving while impaired,[4] had violated the terms of his probation by using drugs and alcohol, had missed 17 days of work as a result of his incarceration, and had provided false reasons for his absence. Moreover, petitioner's 17-day absence disrupted the learning process at Avondale High School, at least for those students in petitioner's classes. Respondent's reasons for discharging petitioner were developed with reference to these particular facts and circumstances, and were not freakish, whimsical, or apt to change suddenly. See *Mich Farm Bureau*, 292 Mich App at 141. Nor is there any evidence to suggest that respondent's reasons were based on prejudice, animus, or improper motives. See *id.* at 145. In light of the record evidence presented in this case, the Commission determined that respondent's reasons were "not arbitrary or capricious" within the meaning of MCL 38.101(1), as amended. We conclude that the Commission's determination in this regard was authorized by law and supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28.[5]

---

[4] Petitioner correctly points out that the offense of driving while impaired is not listed in § 1535a of the Revised School Code, MCL 380.1535a. Therefore petitioner's conviction of driving while impaired, *standing alone*, would not necessarily have provided sufficient reason for his discharge. MCL 38.101a. However, petitioner's conviction of driving while impaired was only one of numerous pieces of evidence on which the Commission relied to support its final decision. MCL 38.101a does not preclude the Commission from considering a teacher's conviction of a nonlisted offense in conjunction with other admissible evidence.

[5] Petitioner argues that a lesser form of discipline, such as that recommended by the hearing referee, would have been more appropriate. However, the Commission may "adopt, modify, or reverse the preliminary decision and order" of the hearing referee, MCL 38.104(5)(m), and it is solely within the province of the Commission to determine the appropriate penalty for teacher misconduct, see *Lewis v Bridgman Pub Sch (On Remand)*, 279 Mich App 488, 496-497; 760 NW2d 242 (2008) (opinion by FITZGERALD, J.). We defer to the Commission's determination of the

Affirmed.

OWENS, P.J., and HOEKSTRA, J., concurred with JANSEN, J.

---

appropriate level of discipline because this is a matter within its area of administrative expertise. See *Sutherby*, 132 Mich App at 588-589. Our task "is not to determine whether, in our own judgment, we believe a teacher should or should not be discharged, but only whether there is 'competent, material and substantial evidence' on the record to sustain the decision of the Tenure Commission." *Clark v Swartz Creek Community Sch*, 488 Mich 993 (2010) (MARKMAN, J., concurring), quoting Const 1963, art 6, § 28.